**The QUAKER OATS COMPANY,**
**Plaintiff-Appellant,**

v.

**M/V TORVANGER, her engines, tackle, etc., and Westfal Larsen and Co., A/S, Defendants-Appellees.**

**No. 83–2314**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

June 15, 1984.

Rehearing and Rehearing En Banc Denied July 13, 1984.

---

Brown, Sims & Ayre, Kenneth G. Engerrand, Houston, Tex., for plaintiff-appellant.

Robert M. Julian, Houston, Tex., for defendants-appellees.

Before BROWN, TATE, and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

The plaintiff, The Quaker Oats Company ("Quaker Oats"), appeals from the district court's dismissal of its claim under the Carriage of Goods by the Sea Act ("COGSA"), 46 U.S.C. § 1300–1315, for damages to a cargo of tetrahydrofuran, a white chemical, shipped aboard the M/V Torvan-

**240**

ger, a vessel owned by Westfal Larsen and Company ("Westfal Larsen"), made defendants herein. Quaker Oats contends that the district court erred as a matter of law in finding that Westfal Larsen, the defendant carrier, had successfully rebutted the shipper Quaker Oats' prima facie case, thus shifting the burden of proof back to Quaker Oats, without explaining the cause of the loss. Finding that the court did err in applying the COGSA burden-shifting scheme, we reverse.

Quaker Oats purchased approximately five hundred metric tons of tetrahydrofuran from Mitsubishi Corporation of Tokyo, Japan ("Mitsubishi"). Mitsubishi chartered the Torvanger to transport the tetrahydrofuran from Kobe, Japan to Houston, Texas. Analysis of a composite of samples of the tetrahydrofuran taken after the cargo had been loaded on the vessel in Kobe, Japan indicated that the peroxide content was well within commercially acceptable levels. Samples taken upon the Torvanger's arrival in Houston from the three tanks aboard the vessel in which the chemical was carried, however, revealed peroxide contamination in one of the tanks beyond commercially acceptable levels. Quaker Oats sued the Torvanger and Westfal Larsen, asserting rights under COGSA for recovery of expenses incurred in purging the peroxide from the tetrahydrofuran.

## I.

■ Both parties agree that this dispute is governed by COGSA, which regulates the rights and liabilities arising out of the carrier's issuance of a bill of lading with respect to cargo damage or loss.[1] "To enforce their respective rights under the Act, litigants must engage in the ping-pong game of burden shifting mandated by Sections 3 and 4. [46 U.S.C. §§ 1303 and 1304]." *Nitram, Inc. v. Cretan Life*, 599 F.2d 1359, 1373 (5th Cir.1979). The plaintiff establishes a prima facie case by proving that the cargo for which the bill of lading issued was "loaded in an undamaged condition, and discharged in a contaminated condition." *Socony Mobil Oil Company v. Texas Coastal and International, Inc.*, 559 F.2d 1008, 1010 (5th Cir.1977). The "bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described." 46 U.S.C. § 1303(4).

■ Once the plaintiff has presented a prima facie case, "the carrier then has the burden of proving that it exercised due diligence to prevent the damage or that the harm was occasioned by one of the excepted causes delineated in 46 U.S.C. § 1304(2)."[2] *Blasser Brothers, Inc. v.*

1. The carrier's responsibilities and liabilities under the Act are as follows:
    Seaworthiness
    (1) The carrier shall be bound, before and at the beginning of the voyage, to exercise due diligence to—
    (a) Make the ship seaworthy;
    (b) Properly man, equip, and supply the ship;
    (c) Make the holds, refrigerating and cooling chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation.
    Cargo
    (2) The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried.
    46 U.S.C. § 1303(1)–(2).

2. The excepted causes are listed in the Act as follows:
    (2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—
    (a) Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the manager of the ship;
    (b) Fire, unless caused by the actual fault or privity of the carrier;
    (c) Perils, dangers, and accidents of the sea or other navigable waters;
    (d) Act of God;
    (e) Act of war;
    (f) Act of public enemies;
    (g) Arrest or restraint of princes, rulers, or people, or seizure under legal process;
    (h) Quarantine restrictions;
    (i) Act or omission of the shipper or owner of the goods, his agent or representative;
    (j) Strikes or lockouts or stoppage or restraint of labor from whatever cause, whether partial or general: *Provided,* That nothing herein contained shall be construed to relieve a carrier from responsibility for the carrier's own acts;
    (k) Riots and civil commotions;
    (*l*) Saving or attempting to save life or property at sea;

*Northern Pan-American Line*, 628 F.2d 376, 381 (5th Cir.1980); *accord Nitram, Inc. v. Cretan Life, supra*, 599 F.2d at 1373; *Socony Mobil Oil Company, supra*, 559 F.2d at 1010; *Nichimen Company, Inc. v. M/V Farland*, 462 F.2d 319, 325 (2nd Cir.1972). *See also* 2A Benedict on Admiralty § 56 (7th ed. 1983).

■ If the carrier rebuts the plaintiff's prima facie case with proof of an excepted cause listed in § 4(2)(a)-(p) of COGSA, 46 U.S.C. § 1304(2)(a)-(p), the burden returns to the plaintiff to establish that the carrier's negligence contributed to the damage or loss. *Blasser Brothers, Inc. v. Northern Pan-American Line, supra*, 628 F.2d at 382; *Cf. Lekas & Drivas, Inc. v. Goulandris*, 306 F.2d 426, 432 (2nd Cir.1962). If the plaintiff is then able to establish that the carrier's negligence was a contributory cause of the damage, the burden shifts to the carrier "to segregate the portion of the damage due to the excepted cause from that portion resulting from [the carrier's] own negligence." *Nitram, Inc. v. Cretan Life, supra*, 599 F.2d at 1373.

■ In addition to rebuttal of the prima facie case by proof of one of the specific exception causes of cargo damage, 46 U.S.C. § 1304(2)(a)-(p), the carrier may also rebut the prima facie case by relying on the catch-all exception in § 1304(2)(q) of COGSA, which provides that the carrier may exonerate himself from loss from any cause other than those listed in 4(2)(a)-(p)

(m) Wastage in bulk or weight or any other loss or damage arising from inherent defect, quality, or vice of the goods;
 (n) Insufficiency of packing;
 (o) Insufficiency or inadequacy of marks;
 (p) Latent defects not discoverable by due diligence; and
 (q) Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage.
46 U.S.C. § 1304(2). In exculpating the carrier, the district court relied on (q), providing in effect that the carrier may escape liability by proving that the loss or damage occurred "without the actual fault and privity of the carrier...." 46 U.S.C. § 1304(2)(q). The carrier's burden of establishing "his own freedom from contributing fault ... is no mere burden of going forward with evidence, but a real burden of persuasion, with the attendant risk of nonpersuasion." Gilmore and Black, The Law of Admiralty § 3–37 at p. 168; § 3–43 (2nd ed. 1975). Consequently, the burden of proof does not return to the plaintiff, but rather judgment must hinge upon the adequacy of the carrier's proof that he was free from any fault whatsoever contributing to the damage of the goods entrusted to his carriage. *Id.*

## II.

The district court in this case found that Quaker Oats had established a prima facie case by producing evidence that the tetrahydrofuran was "within purchase order specifications" upon delivery to the Torvanger and that "at least a portion of it was no longer in that condition when tendered to [Quaker Oats]" after shipment.

In rebuttal to that prima facie case, the carrier Westfal Larsen produced evidence by which peroxide formation could allegedly be considered an "inherent vice" of tetrahydrofuran, 46 U.S.C. § 1304(2)(m), and that due diligence was exercised by Westfal Larsen to avoid any other possible causes of peroxide formation. Though finding the evidence on the "inherent vice" exception to be "non-dispositive,"[3] the district court found that Westfal Larsen success-

proving that the damage occurred "without the fault" of the carrier.

**3.** The "inherent defect" exception to a carrier's COGSA liability, § 1304(2)(m) was not proved by the testimony that the chemical has a natural tendency to form peroxides when exposed to oxygen. Here, the uncontradicted testimony was that the chemical was properly treated by an inhibitor and protected from oxygenization by a nitrogen blanket during shipment and, thus, should not have formed peroxides. In order to establish this exception to COGSA liability, the carrier must show (as it did not here) some defect, quality, or vice adhering to the individual cargo of the chemical in question. *Horn v. Cia de Navegacion Fruco, S.A.*, 404 F.2d 422, 435 (5th Cir.1969).

fully rebutted Quaker Oats prima facie case by producing evidence of due diligence "with respect to the preparation of the loading and storage equipment, the loading of the cargo, and the care of the cargo during voyage ...," thus, "return[ing] to Quaker Oats the burden to show that the peroxide formation was caused at least in part by [Westfal Larsen's] negligence." Finding that the shipper Quaker Oats failed to carry the burden, the district court rendered judgment for Westfal Larsen, the defendant carrier.

### III.

Before explaining the error in the district court's application of the COGSA burden-shifting scheme, the nature of the chemical shipped and the reasons for its peroxide contamination should be noted.

Tetrahydrofuran ("the chemical") has a natural tendency to form peroxides, especially if exposed to oxygen, unless it is chemically inhibited. Here, before shipment, the seller had treated the chemical with an inhibitor, and in fact the two tanks fully filled with the shipped chemical arrived without contamination; only the third tank, partially filled, was found to be peroxide-contaminated upon arrival. As a further safeguard against exposure to oxygen, all tanks were injected with a "nitrogen blanket" of sufficient pressure, designed to insulate the chemical from oxygen during shipment. The vessel's officers inspected the "nitrogen blanket" periodically and with due diligence, the district court found, and a water content analysis performed upon the cargo's arrival in Texas indicated that the nitrogen blanket had been properly maintained.

We thus have the following situation: If we accept the testimony offered for the shipper Quaker Oats (as the district court

did), the chemical was loaded and found after testing to be free of peroxide contamination when shipped and when the bill of lading was issued. If we accept the testimony offered for the defendant carrier, as the district court equally did, the vessel's officers performed with due diligence their duty of maintaining the protective nitrogen cover that should have made exposure to oxygen and peroxide contamination impossible during the period that the cargo was entrusted to the care of the shipper. Consequently, if all the evidence is true, the evidence shows no cause for the peroxide contamination. However, that contamination must have resulted either from some defect in the chemical or its processing for shipment, for which the carrier would not be responsible—which the evidence does not prove; or else that contamination must have resulted during shipment from some failure of the vessel's officers or of the vessel—which again is not proved.

### IV.

■ The district court held that the carrier's proof of due diligence in preparation of the cargo, its loading, and its care during the voyage "was sufficient to return to the Plaintiff the burden to show that the peroxide formation was caused at least in part by the Defendant's negligence."[4] None of the specific excepting causes (including the "inherent defect" exception, *see* note 3 *supra*), 46 U.S.C. § 1304(2)(a)-(p), were proved by the carrier, so the burden did not shift back to the shipper to prove that carrier negligence contributed to the damage. Under COGSA, the carrier's proof of the remaining general catch-all exception to liability relied upon, § 1304(2)(q), is not shown by its simple and to be expected evidence that its crew did all it was supposed to do (although here, how-

---

**4.** The district court then held that the plaintiff shipper had not negated the possibility that some ingredient in the chemical, not evident at time of testing when the cargo was loaded, had during the voyage overriden the inhibitor.

We pretermit that some doubt may be cast upon this deduction because the chemical to which the inhibitor had been added at the plant was from its homogenized bulk loaded into three tanks on the vessel, two of which were

completely filled (in which no contamination took place), and one of which only partially filled (in which the contamination took place), all three injected with a nitrogen blanket properly maintained as to pressure and checked periodically by the vessel's officers during the voyage. It is sufficient to note only that, as a matter of law, the plaintiff shipper did not bear the burden of *negating* pre-shipment contamination.

ever, somewhat corroborated as to the nitrogen blanket by testing on arrival). The statute provides, more stringently, that the carrier shall prove that its fault did *not* contribute to the accident: "the burden of proof shall be on the person claiming the exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage." 46 U.S.C. § 1304(2)(q).

For purposes of this catch-all no-fault exception to liability, 46 U.S.C. § 1304(2)(q), the presumption of fault—resulting from the arrival of cargo, damage free when shipped under bill of lading, but contaminated on arrival—is thus not rebutted by simple proof of the carrier's own due diligence, evidence peculiarly within its knowledge and control during the period of the shipment of the cargo entrusted to its care. For the § 1304(2)(q) exception (*see* note 2, *supra*) to come into play, the carrier must first prove what that "other cause" was. *See,* W. Tetley, Marine Cargo Claims 245, 246 (1978). But the district court found that "no one knows what caused the cargo to form peroxide in the way it did" (R. 14) and indeed concluded that the cause of the damage was a "mystery" (R. 12).

To rebut the presumption of fault when relying upon its own reasonable care, the carrier must further prove that the damage was caused by something other than its own negligence. *Calmaquip Engineering West Hemisphere Corporation v. West Coast Carriers Ltd.,* 650 F.2d 633, 640–41 (5th Cir.1981); *Socony Mobil Oil Company, supra,* 559 F.2d at 1013. Once the shipper establishes a prima facie case, under "the policy of the law" the carrier must "explain what took place or suffer the consequences." *Companie De Navigation, etc. v. Mondial United Corporation,* 316 F.2d 163, 170 (5th Cir.1963); *see also* discussion of issue similar to the present in

*Socony Mobil Oil Company, supra,* 559 F.2d at 111. "[T]he law casts upon [the carrier] the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability." *The Vallescura,* 293 U.S. 296, 303, 55 S.Ct. 194, 196, 79 L.Ed. 373 (1934).[5]

Here, contrary to the policy of the statute, the trial court placed the burden upon the shipper, not the carrier, to explain the unexplained or unexplainable loss. Its judgment must therefore be reversed, and the case remanded for entry of judgment awarding the plaintiff the damages sustained.

*Conclusion*

For the reasons stated, the judgment dismissing the plaintiff's claim is REVERSED, and the case REMANDED for the award of damages.

REVERSED AND REMANDED.

---

**5.** As stated in Gilmore and Black, The Law of Admiralty, § 3–43, p. 185, the carrier

has sooner or later the burden of establishing his own freedom from fault except where he has shown that the loss was caused by overwhelming force of third persons, some fault in the shipper or the goods, or the attempt to save life or property. This leaves with him the burden of explaining a loss and exonerating himself from the imputation of fault in almost all cases in which it has not been demonstrated that at least a part of the fault lies with somebody else.