978 F.2d 47
 1993 A.M.C. 509
 ASSOCIATED METALS & MINERALS CORP., Plaintiff-Appellant,
v.
M/V ARKTIS SKY, her engines, boilers, tackle, etc.;
Erhversinvestering K/S; Elite Shipping I/S, as
Owner claiming on behalf of M/V ARKTIS
SKY in rem, Defendants-Appellees.
 No. 1630, Docket 92-7219.
 United States Court of Appeals,
Second Circuit.
 Argued June 4, 1992.
Decided Oct. 1, 1992.
 
 Harold M. Kingsley, Hicksville, N.Y., for plaintiff-appellant.
 Peter A. Junge, New York City, for defendants-appellees.
 Before: OAKES, Chief Judge, McLAUGHLIN, Circuit Judge, and LAY, Senior Circuit Judge.*
 LAY, Senior Circuit Judge:
 
 
 1
 This appeal involves an action in rem brought in the district court by Associated Metals & Minerals Corp. against the vessel M/V Arktis Sky; its operator, Erhversinvestering K/S; as well as its owner, Elite Shipping I/S. Elite Shipping entered into a charter party agreement with Altos Hornos De Vizcaya, S.A., a non-party to this action, to ship a cargo of galvanized steel sheets in 398 coils from Bilbao, Spain to Port Elizabeth, New Jersey. The shipper/charterer, Altos Hornos, sold the coils to Associated Metals. Altos Hornos contracted with its own stevedore, Maritime Candida, to load and stow the coils aboard the vessel in Spain. After the cargo was loaded, the chief mate of the Arktis signed with the vessel's stamp a lashing statement which noted that the lash had been "performed under chief mate instructions and satisfactory."
 
 
 2
 When the vessel arrived in Port Elizabeth it was discovered that some of the cargo had shifted during the voyage. The coils were damaged in the sum of $249,629.76. Associated Metals brought an action against the vessel, its operator and its owner. Associated Metals moved for summary judgment. The district court granted summary judgment in favor of the defendants and dismissed the complaint. This appeal followed.
 
 
 3
 Both parties agree that the Carriage of Goods by Sea Act, 46 U.S.C. app. §§ 1300-1314 (1988) (COGSA), applies to the liability questions raised in this case. The district court found that the defendants (the vessel, the operator and owner) established as a matter of law two of the exceptions under COGSA and therefore were exonerated from any damage. We respectfully disagree with the court's analysis; we reverse and remand for further proceedings.
 
 
 4
 The principles governing the grant or denial of summary judgment are well established. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Federal Rule of Civil Procedure 56, the non-moving party must demonstrate to the court the existence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. It has long been the rule that "[o]n summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion...." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).
 
 
 5
 The district court started with the assumption that Associated Metals had established a prima facie case against the vessel under 46 U.S.C. app. § 1303(2) (1988), which obligates a carrier to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." Although this circuit has held that section 1303(2) creates a non-delegable duty on behalf of the vessel,[1] the district court found that these statements were dicta and that the better reasoned cases hold that an "FIOS" or "free in and out, stowed" clause in a bill of lading, binding on the parties, shifts liability to the shipper for improper stowage or discharge without violating COGSA. According to the defendants, the FIOS terms shift both the risk and expense of loading, stowing, and discharging cargo to the shipper and the consignee. The district court thus held that the carrier's duty to load and stow cargo properly and carefully under section 1303(2) is not genuinely non-delegable.
 
 
 6
 In so holding, the district court rejected the reasoning of Nichimen Co. v. M.V. Farland, 462 F.2d 319, 330 (2d Cir.1972), and Demsey & Assoc., Inc. v. S.S. Sea Star, 461 F.2d 1009, 1014-15 (2d Cir.1972), and followed the reasoning of two district court cases in Sigri Carbon Corp. v. Lykes Bros. S.S. Co., 655 F.Supp. 1435 (W.D.Ky.1987), and Sumitomo Corp. of America v. M/V "Sie Kim", 632 F.Supp. 824 (S.D.N.Y.1985). These cases construe COGSA to mean that vessels can be held liable for cargo damage only in cases where the vessel exercised control over the stowage or the stevedores. The district court quoted Sigri Carbon which held "[t]he inclusion of a FIOS term in a bill of lading should not be disregarded as inconsistent with COGSA so long as it is understood that the term in no way relieves the carrier of responsibility for its own acts or for the acts of others under its control." 655 F.Supp. at 1438. Thus, the district court held "that a carrier is not responsible for the consequences of improper stowage by agents of the shipper pursuant to an FIOS bill of lading."
 
 
 7
 We find this reasoning directly contrary to 46 U.S.C. app. § 1303(8) (1988):
 
 
 8
 Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.
 
 In Demsey, this court observed:
 
 9
 Under Sections 1303(1) and (2) of COGSA, the carrier is bound to exercise due diligence to make the ship seaworthy, to make the ship fit and safe for the reception, carriage and preservation of the cargo, and to properly load, handle, stow and discharge the goods being shipped. Every claim for cargo damage creates a maritime lien against the ship which may be enforced by a libel in rem. COGSA, Section 1303(8) prohibits a shipowner from contracting out of this liability. The fact that the [vessel] was operated under charter to [the charterer] does not affect the liability of the vessel.
 
 
 10
 Demsey, 461 F.2d at 1014 (citations omitted).
 
 
 11
 As in this lawsuit, the plaintiff in Demsey purchased steel coils that were damaged during shipping. In Demsey, the shipowner had arranged for the charterers "to load, stow, and trim the cargo at their expense under the supervision of the Captain...." 461 F.2d at 1012. A voyage charter stated that the "cargo was 'to be loaded, stowed and discharged free of risk and expense to the vessel.' " Id. This court held that these advance arrangements did not shield the vessel from liability because COGSA forbids a shipowner from contracting out of liability for improper stowage of cargo. Id. at 1014-15. The court did, however, give some effect to the agreements, ultimately determining that both the vessel owner and the time charterer should be indemnified by the voyage charterer. Id. at 1019.
 
 
 12
 Similarly, in Nichimen, the plaintiff sued a vessel owner and a charterer over damage to steel coils that occurred while the steel was in transit. 462 F.2d at 322. Examining the relationships between the parties, the district court rejected a factual assertion that the plaintiff's agent had stowed the cargo. Id. at 330. This court expressed its approval of the district court's factual finding and stated that "in any event, under § 3(2) of COGSA, the carrier's duty to 'properly and carefully load ... [and] stow ... the goods carried' is non-delegable." Id. As in Demsey, the court ultimately determined that the charterer must indemnify the vessel for cargo damage. Id. at 332-33.
 
 
 13
 We find Nichimen and Demsey's statutory analysis to be persuasive. Under the district court's enforcement of the FIOS clause, 46 U.S.C. app. § 1303(8) would have no meaning. The plain language of section 1303(8) forbids enforcement of agreements to relieve carriers of liability for negligence in carrying out the duties set forth in section 3 of COGSA. See Anthony N. Zock, Charter Parties in Relation to Cargo, 45 Tul.L.Rev. 733, 747-48 (1975) (stating that "any provision in the charter party or the bill of lading that stipulates for an obligation, liability, or exemption that conflicts with the terms of either COGSA or the Harter Act will have no effect"). One of the duties assigned to carriers is that of properly and carefully loading cargo. See 46 U.S.C. app. § 1303(2) (1988). Thus, an agreement such as the one in question here is "null and void" under the statute because it purports to relieve a carrier of liability for negligence in one of its duties, the stowing of cargo.[2] It is of no consequence that unlike in Demsey and Nichimen, indemnification for damages is not in issue here.
 
 
 14
 The defendants suggest an alternative reading of the statute. They suggest that 46 U.S.C. app. § 1303(8) "specifically permits a carrier to limit its liability for its statutory duties, so long as such a limitation is consistent with other provisions of COGSA." (Br. for Defs.-Appellees at 24). This argument is girded on the portion of 46 U.S.C. app. § 1303(8) which states carriers may not contractually lessen their liability "otherwise than as provided in this chapter...." Defendants contend this language suggests that the duties of section 1303 are limited by the immunities of section 1304(2). A more accurate reading of the phrase suggests that "otherwise than as provided in this chapter...." modifies the damage limitations ("lessening such liability") set forth in COGSA, which provides a $500 per package ceiling on damages. See 46 U.S.C. app. § 1304(5). The phrase does not affect the statute's prohibition on agreements relieving carriers of liability for negligence in carrying out their duties under the Act.
 
 Section 1304(2)(i)
 
 15
 The district court held that the vessel had also established a second defense by carrying its burden of proof under section 1304(2)(i), which explicitly provides that a carrier shall not be liable for an act or omission of a shipper or owner of goods, his agent or representative.[3] The district court reasoned that its holding under the FIOS clause was consistent with this second defense. The result may be consistent but the analysis cannot be the same.
 
 
 16
 The liability provisions set forth in 46 U.S.C. app. § 1303(2) create a prima facie case against the vessel when a plaintiff (here a non-signator to the charter agreement) establishes that the carrier received the cargo in good condition and that the cargo arrived at its destination in a damaged condition. See, e.g., Demsey, 461 F.2d at 1014. Once a prima facie case is created, the burden shifts to the carrier to show, under section 1304(2)(i) and section 1304(2)(q), that the cargo loss or damage results from an act or omission of the shipper or owner of goods, his agent or representative; or if the loss or damage results from any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier. As previously discussed, this burden cannot be carried by contract terms or language of FIOS contained in a bill of lading. Both are barred by the non-delegable provisions of COGSA under section 1303(8).
 
 
 17
 By granting summary judgment, the court found there was no dispute of material fact that the vessel had established its defense. The court reasoned that the shipper/charterer contracted with a stevedore to load and stow the cargo in Bilbao, Spain. The court found the stevedore exercised full authority over the loading and stowage of the cargo. The court reasoned that the lashing statement of the vessel's chief mate was merely an indication that the operation would not impair the seaworthiness of the vessel.
 
 
 18
 In a discussion involving the identical issue, we find the reasoning of the Fifth Circuit helpful:
 
 
 19
 To rebut the presumption of fault when relying upon its own reasonable care, the carrier must further prove that the damage was caused by something other than its own negligence. Once the shipper establishes a prima facie case, under "the policy of the law" the carrier must "explain what took place or suffer the consequences." "[T]he law casts upon [the carrier] the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability."
 
 
 20
 Quaker Oats Co. v. M/V Torvanger, 734 F.2d 238, 243 (5th Cir.1984) (citations omitted), cert. denied, 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985).
 
 
 21
 In the present case, the court relied on the fact that the loading and stowage was performed by the shipper's agent, the stevedore. This overlooks a statement in the record from Capt. Ricardo Manso Gutierrez, a marine surveyor in Bilbao, Spain, who stated his company was hired by Associated Metals to inspect the cargo during loading. He reports that pursuant to the invariable custom at the port "the master and his chief mate exercised total control over all stowage, chocking, lashing and securing operations, and gave their approval to the method and manner of stowage, chocking, lashing and securing before sailing." (J.A. at 298.) Gutierrez also notes that the chief mate personally signed and stamped the lashing statement with the notation that "[t]he lash has been performed under chief mate instructions and satisfactory." (Id.; see also J.A. at 299.)
 
 
 22
 In addition, the vessel's surveyor in Port Elizabeth, Hansen Marine Services, Inc., reports that the chief officer was aware of problems that arose in stowing the cargo. The surveyor's report reads:
 
 
 23
 From the Chief Officer, we learned during loading at Bilbao, the longshoremen had started to load the coils at each end of the hold and toward the center section. When discharging was completed, there was about 3 feet of open space across the center section, which had been shored off with heavy lumber.
 
 
 24
 During the ship's heavy weather, the ship was rolling more than 30 degrees to each side, in 6 seconds. The wooden shorings had broken down and coils had shifted.
 
 
 25
 J.A. at 448.
 
 
 26
 There should be little dispute that the purpose of COGSA is to place primary responsibility for the safety of the cargo upon the vessel, its operators and owners. The parties cannot by private agreement circumvent the legislative purpose of the Act. 46 U.S.C. app. § 1303(8). The vessel may exonerate its responsibility by carrying its burden of proof that the damage did not occur because of its own acts. However, we find that the documentary proof and conflicting affidavits submitted in this case create a genuine dispute of material fact and that the defendants are not entitled at this stage of the proceeding to a judgment as a matter of law. Thus, we find the court has erred in granting a summary judgment in favor of the defendants.
 
 
 27
 The judgment is vacated and the case remanded for further proceedings in accord with this opinion.
 
 
 
 *
 Hon. Donald P. Lay, Senior United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 See Nichimen Co. v. M.V. Farland, 462 F.2d 319, 330 (2d Cir.1972); Demsey & Assoc., Inc. v. S.S. Sea Star, 461 F.2d 1009, 1014-15 (2d Cir.1972)
 
 
 [2]
 In a recent opinion, the United States Court of Appeals for the First Circuit held that "parties are free ... to alter the general rule" that "the duty to load, stow, trim, and ultimately discharge a vessel's cargo generally falls on the shipowner who also bears the consequences of any failure." Continental Grain Co. v. Puerto Rico Maritime Shipping Auth., 972 F.2d 426, 430 (1st Cir.1992). This case involved a private carriage of goods, see id. at 430, and thus COGSA did not apply, see Zock, supra, at 738
 
 
 [3]
 Section 1304(2)(i) reads:
 Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from: (i) Act or omission of the shipper or owner of the goods, his agent or representative.