United States Court of Appeals,

Fifth Circuit.

No. 94-20314

Summary Calendar.

TUBACEX, INC., Plaintiff-Appellant,

v.

M/V RISAN, her engines, boilers, tackles, etc., in rem and against Jugoslavenska Oceanska Plovidba, (Jugooceanija), and Forest Lines, Inc., in personam, Defendants-Appellees.

Feb. 23, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before JOHNSON, DUHÉ and BENAVIDES, Circuit Judges.

JOHNSON, Circuit Judge:

Shipper brought action under COGSA[1] to establish carrier's liability for damage to cargo. The district court granted summary judgment in favor of carrier, however, finding that the carrier had successfully made out a defense under 46 U.S.C. § 1304(2)(q) by showing that the damage was caused by the actions of the shipper's agents and without the fault or negligence of the carrier. Finding no error, we AFFIRM.

I. FACTS AND PROCEDURAL HISTORY

In December of 1990, Tubacex, Inc., contracted with Forest Lines, Inc. (hereinafter "FLI"), to ship a load of seamless rolled steel tubes from Bilbao, Spain, to New Orleans, Louisiana, and

---

[1]Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300, *et seq.*

1

Houston, Texas. This cargo was loaded aboard an FLI lash barge[2] and FLI issued to Tubacex bills of lading which were "clean."[3] This barge was to be loaded aboard the next available FLI mother vessel to call at Bilbao, Spain.

Tubacex believed that such a vessel would be available in January of 1991. However, in January, FLI informed Tubacex that the next mother vessel that would call at Bilbao would be in April of 1991. Facing other deadlines for the cargo, Tubacex decided to make other arrangements. Hence, Tubacex demanded that the cargo be unloaded so that it could be shipped by other means.

On February 7, 1991, a stevedore chosen and hired by Tubacex unloaded the cargo from the FLI barge. This unloading procedure took place during inclement weather and the cargo was stored in the open air, while wet, for several days until it was loaded aboard the vessel M/V RISAN. The bills of lading issued by Jugoslavenska Oceanska Plovidba (Jugooceanija) at that time noted some damage to the cargo.[4]

Subsequently, Tubacex brought the instant action against FLI[5]

---

[2]A lash barge is a type of barge that may be loaded on a larger ship called a mother vessel. The mother vessel collects the loaded barges and unloads them at various ports of destination. The loaded barges may then be moved to waters that the mother vessel cannot reach or unloaded at that port without the need for special equipment.

[3]This signifies that no damage to the cargo was noted at the time of the issuance of the bills of lading.

[4]The damage noted was that some of the pipes were bent and that the pipes were partly wet and had some surface rust.

[5]Tubacex also brought suit against the M/V RISAN, *in rem,* and against Jugooceanija, *in personam.* Jugooceanija answered but

in redress of the damage caused to the cargo. FLI filed a motion for summary judgment requesting that the district court find, in pertinent part, that:

1. The damage was caused by Tubacex's agents and not by FLI. Thus, FLI is exempt from liability under 46 U.S.C. § 1304(2)(i); and

2. There is no evidence to show that FLI in any way caused the damage. Therefore, FLI is exempt from liability under 46 U.S.C. § 1304(2)(q).

Initially, the district court denied this motion. However, FLI filed a motion for reconsideration of its summary judgment which the district court granted finding that FLI had successfully made out a defense under 46 U.S.C. § 1304(2)(q). The district court entered final judgment on March 25, 1994, and Tubacex has timely appealed.

## II. DISCUSSION

### A. Standard of Review

In determining whether a district court properly granted summary judgment, this Court must review the record under the same standards that guided the district court. *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988). Under those standards, we will only affirm a summary judgment if we conclude that "there is no genuine issue of as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party that moves for summary judgment bears the initial

---

was eventually dismissed from the suit and jurisdiction was never obtained over the M/V RISAN.

burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response. If the movant does meet this burden, however, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.; Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the nonmovant fails to meet this burden, then summary judgment is appropriate.

B. COGSA Generally

Both parties agree that this dispute is governed by COGSA, which regulates the rights and liabilities arising out of the carrier's issuance of a bill of lading with respect to cargo damage or loss. *Quaker Oats Co. v. M/V Torvanger,* 734 F.2d 238, 240 (5th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985). To enforce their respective rights under COGSA, " "litigants must engage in the ping-pong game of burden-shifting mandated' by sections 1303 and 1304 of the Act." *Sun Co., Inc. v. S.S. Overseas Arctic,* 27 F.3d 1104, 1109 (5th Cir.1994) (quoting *Nitram, Inc. v. Cretan Life,* 599 F.2d 1359, 1373 (5th Cir.1979)). Initially, a shipper plaintiff establishes a prima facia case by proving that the cargo for which the bill of lading was issued was loaded in an undamaged condition, and discharged in a damaged

4

condition. *Socony Mobil Oil Company v. Texas Coastal and International, Inc.,* 559 F.2d 1008, 1010 (5th Cir.1977); *United States v. Central Gulf Lines,* 974 F.2d 621, 628 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993). For the purpose of determining the condition of the goods at the time of receipt by the carrier, the bill of lading serves as prima facia evidence that the goods were loaded in the condition therein described. 46 U.S.C. § 1304(4); *Blasser Bros., Inc. v. Northern Pan-American Line,* 628 F.2d 376, 381 (5th Cir.1980).

Once the shipper has presented a prima facia case, the burden shifts to the carrier to prove that it either exercised due diligence to prevent the damage or that the loss was caused by one of the exceptions set out in section 1304(2) of COGSA. *Sun Company,* 27 F.3d at 1109; *Tenneco Resins Inc. v. Davy International, AG,* 881 F.2d 211, 213 (5th Cir.1989). If the carrier rebuts the shipper's prima facia case with proof of an excepted cause listed in section 1304(2)(a)-(p), the burden returns to the shipper to establish that the carrier's negligence contributed to the damage or loss. *Quaker Oats,* 734 F.2d at 238. Then, if the shipper is able to establish that the carrier's negligence was a contributory cause of the damage, the burden switches back to the carrier to segregate the portion of the damage due to the excepted cause from that portion resulting from the carrier's own negligence. *Nitram,* 599 F.2d at 1373.

In addition to the excepted causes listed in section 1304(2)(a)-(p), a carrier may rebut a shipper's prima facia case by

5

relying on the catchall exception in section 1304(2)(q). This section provides that the carrier may exonerate itself from loss from any cause other than those listed in section 1304(2)(a)-(p) by proving that the loss or damage occurred "without the actual fault and privity of the carrier...." 46 U.S.C. § 1304(2)(q). The burden on the carrier under this section, however, is more than merely a burden of going forward with evidence, but rather it is a burden of persuasion with the attendant risk of non-persuasion. *Quaker Oats,* 734 F.2d at 241. Hence, under this section, the burden of proof does not switch back to the shipper, but rather "judgment must hinge upon the adequacy of the carrier's proof that he was free from any fault whatsoever contributing to the damage of the goods entrusted to his carriage." *Id.*

C. Availability of Defenses Under Section 1304(2)(i) and (q)

In the case at bar, the district court determined that Tubacex successfully made out a prima facia case by providing the clean bills of lading issued by FLI and showing damage to the goods. In response, FLI raised defenses under section 1304(2)(i) and (q)[6] arguing that it did not cause the damage to the cargo, but rather

---

[6]Section 1304(2) provides that neither the carrier nor the ship shall be responsible for damage to the cargo arising or resulting from—

> (i) Act or omission of the shipper or owner of the goods, his agent or representative; or
>
> ....
>
> (q) Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier ...

6

the damage was caused during the unloading by the actions of the stevedore that was hired by, and under the control of, Tubacex.

Tubacex contends, however, that these section 1304(2) defenses are unavailable to FLI because the damage to the goods herein arose out of the unloading of the pipe. In making this argument, Tubacex notes that section 1303(2) states that "[t]he carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." Further, Tubacex contends that these duties are nondelegable because the statute goes on to provide that "[a]ny *clause, covenant,* or *agreement* in a contract of carriage" which seeks to relieve the carrier for liability for the duties provided in this section will not be valid. 46 U.S.C. § 1303(8) (emphasis added). Relying on these two sections, Tubacex argues that the nondelegability of the carrier's loading and unloading duties overrides any defense that might apply under section 1304(2) when the damage is caused during the performance of those tasks.

We disagree with Tubacex's melding of these provisions. COGSA was designed to void overreaching *clauses* inserted by carriers in bills of lading unreasonably limiting the carrier's liability. *Siderius, Inc. v. M/V Ida Prima,* 613 F.Supp. 916, 920 (S.D.N.Y.1985); *see also Encyclopaedia Britannica v. S.S. Hong Kong Producer,* 422 F.2d 7, 11-12 (2d Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970); *Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers, Ltd.,* 650 F.2d 633, 639 (5th Cir.1981). Section 1303(8) embodies this

7

purpose by invalidating "any clause, covenant or agreement in a contract of carriage" which seeks to relieve the carrier of liability for the duties assigned to the carrier under the statute. However, in this case, there is no overreaching contract provision in the bill of lading that the carrier is resorting to in order to exonerate itself.

Instead, the carrier is relying on two defenses, section 1304(2)(i) and (q), specifically extended to carriers under the Act itself. We see no conflict in the statute with applying these two defenses even to the nondelegable duties of the carrier. Other federal courts have done so without comment. *See Aunt Mid, Inc. v. Fjell-Oranje Lines,* 458 F.2d 712 (7th Cir.), *cert. denied,* 409 U.S. 877, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972) (upholding carrier's section 1304(2)(i) defense in a case involving the proper stowage of perishable cargo); *Jefferson Chemical Co. v. M/T GRENA,* 413 F.2d 864 (5th Cir.1969) (affirming trial court's finding that shipper assumed risk by not requiring shipment of propylene glycol in lined or stainless steel tanks); *Puerto Rican-American Ins. Co. v. Sea-Land Service, Inc.,* 653 F.Supp. 396 (D.P.R.1986) (upholding carrier's section 1304(2)(i) defense where the shipper stowed the cargo to a height exceeding the underlying boxes' capacity).

Most instructive, though, is the Second Circuit's opinion in *Associated Metals & Minerals Corp. v. M/V ARKTIS SKY,* 978 F.2d 47 (2d Cir.1992). In that case, the cargo was damaged when it shifted during the voyage. Even though this damage arose from the handling and stowage of the cargo, a nondelegable duty of the carrier under

8

section 1303(2), the carrier sought to exonerate itself on the basis of a FIOS clause[7] in the bill of lading. The district court ruled in favor of the carrier, but the Second Circuit reversed holding that contract terms shifting liability for the duties of the carrier set out in section 1303(2) were barred by the nondelegable provisions of section 1303(8). *Id.* at 51. Even so, our sister circuit went on to explain that the carrier could escape liability under the defense provided in section 1304(2)(i) "by carrying its burden of proof that the damage did not occur because of its own acts." *Id.* at 52.

Proving that the loss herein did not occur because of its own acts is exactly what FLI has attempted to do. Like the *M/V ARKTIS SKY* court, we find that while section 1303(8) would bar a provision in the bill of lading shifting liability for the duties set out in section 1303(2), it does not bar a defense under section 1304(2)(i) or (q) that attempts to prove that the damage did not occur through any act of the carrier or its agents.

D. Application of Section 1304(2)(q)

The district court found that FLI had met its burden under section 1304(2)(q) to show that no act or omission of FLI had caused the damage to the pipes, but rather the damage was caused by the acts of Tubacex or its agents. To that end, FLI has presented summary judgment evidence in the form of affidavits to establish that the damage to the cargo was caused during the offloading. These affidavits relate that the unloading took place during

---

[7]"Free in and out, stowed" clause.

inclement weather and that, during the unloading, some of the bundles of pipe unloosened causing bending or damage to the pipe. Also, the pipe was stored in the open air, while wet, for several days before it was loaded onto the vessel that would transport it. Finally, FLI's affidavits established that the stevedore that accomplished the unloading was hired by, and under the complete control of, Tubacex.[8] In response, Tubacex presented no evidence that FLI caused the damage.

In determining whether it was appropriate to grant summary judgment on these facts, it is again useful to consider *M/V ARKTIS SKY,* 978 F.2d 47. In that case, the carrier attempted to meet its burden under section 1304(2)(i) by showing the loading and stowing was done by the shipper's agent. *Id.* at 51. However, the appellate court noted that there was evidence that it was the custom for the master and his chief mate to exercise total control over all stowage operations and that the chief mate had personally signed the lashing statement with the notation that the lashing and stowing had been performed under his instructions and to his

---

[8]In *Agrico Chemical Co. v. S/S ATLANTIC FOREST,* 459 F.Supp. 638 (E.D.La.1978), *aff'd* 620 F.2d 487 (5th Cir.1980), a carrier attempted to make out a § 1304(2)(q) defense by arguing that the towing company, which the *carrier* had hired, was an independent contractor. Accordingly, the carrier argued that the towing company's actions, which caused the damage, were not its own actions or the actions of one of its agents. The trial court rejected this argument, though, finding that the carrier could not insulate itself from liability for its nondelegable duties under § 1303(2) by use of independent contractors. *Id.* at 489. That case is distinguishable from the case at bar, though. In the instant case, Tubacex, the shipper, and not FLI, the carrier, hired the independent contractor. FLI was not trying to delegate away its nondelegable duties. Instead, Tubacex was reasserting its control over the cargo.

satisfaction. *Id.* That was sufficient, the court found, to raise a genuine issue of material fact as to whether any action of the carrier contributed to the loss thus defeating summary judgment. *Id.* at 52.

In contrast to the *M/V ARKTIS SKY*, there is no evidence to conflict with FLI's affidavits that the damage was caused by the actions of the stevedores hired by Tubacex. Therefore, Tubacex has failed to designate specific facts demonstrating the existence of a genuine issue of material fact on this issue. Accordingly, the district court was correct in granting summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

III.

CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.

11