**Glenn HOLLAND, Jr. and Steve Cox**

v.

**John Alvin NORTON, the Illinois Central Railroad and State of Louisiana.**

**No. CIV. A. 98–2292.**

United States District Court, E.D. Louisiana.

Sept. 10, 1999.

---

Steven John Koehler, Leefe, Gibbs & Koehler, Metairie, LA, Rhett M. Powers, Forstall, Musa & Powers, New Orleans, LA, for Plaintiffs.

Douglas K. Williams, Donna Bramlett Wood, Cullen J. Dupuy, Breazeale, Sachse & Wilson, Baton Rouge, LA, for Defendants.

PORTEOUS, District Judge.

This cause came for hearing on Wednesday, September 1, 1999, upon motions of defendants, Illinois Central Railroad and John Alvin Norton, to strike exhibit # 3 attached to plaintiffs' supplemental memorandum in opposition to summary judgment and for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 56. Oral argument was heard and the Court took the matter under submission. The Court, having studied the legal memoranda submitted by the parties, as well as the applicable law and jurisprudence, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

### I. BACKGROUND:

This case involves an accident between an 18–wheeler tractor-trailer and a train. As the driver of the truck, Glenn Holland, Jr., attempted to cross the railroad tracks at Alligator Lane in Hammond, Louisiana on July 17, 1997, he was struck by the train. The defendants assert that the Rimkus Report, attached as Exhibit # 3 to the plaintiffs' supplemental memorandum

in opposition, should be stricken as an exhibit and further asserts that there are no genuine issues of material facts thereby entitling them to judgment as a matter of law.

## II. MOTION TO STRIKE:

The defendants move to strike the Rimkus Report for the following reasons: (1) It is not a sworn affidavit and is not in compliance with Rule 56(e); (2) It does not set forth affirmatively the qualifications of the preparers of the report to support the opinions which are given, as required by Rule 56(e); (3) The report is not admissible under Federal Rules of Evidence 402, 403, 702, and 703, in that it is not reliable, and is wholly irrelevant to this accident, occurring in this case. The defendants contend that there are no facts setting forth the height or width of the foliage which is claimed to be a sight obstruction, nor are there any facts setting forth the height of the driver of the truck from the ground upon which to base the line of sight measurements. As such, the calculation of the available sight distance is not reliable. Secondly, it is asserted that the time-distance analysis in the report is not reliable. The only calculation made is how long it would take a tractor-trailer to travel from a point twenty (20) feet short of the crossing to completely clear the far side of the tracks (90 feet), and where the train would be in relation to the claimed obstruction created by the foliage when the tractor-trailer began moving forward. The report fails to take into account the fact that the truck was struck in the cab portion of the tractor-trailer.

Federal Rule of Civil Procedure 56(e) provides that affidavits in support and opposition to motions for summary judgment are to "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Additionally, sworn or certified copies of all papers or parts thereof referred to in the affidavit are to be attached to the affidavit or served therewith. The rule further provides that affidavits may be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. Fed.R.Civ.P. 56(e).

The report submitted as Exhibit 3 does not conform with the requirements of Rule 56 and will be stricken from the record. The exhibit is simply a photocopy of the report sent from Rimkus Consulting Group to Mr. Steven Koehler of Leefe, Gibbs & Koehler. The document is clearly not an affidavit and in no way asserts that the preparer of the report was competent to testify to the matters stated therein. Moreover, the last paragraph of the report clearly states, "[t]his report is for the exclusive use of Leefe, Gibbs, and Koehler and Forstall, Mura, and Powers and is not intended for any other purpose." At trial, this evidence, which is solely based on the opinion of the preparers, would be admissible only if the Court qualified the preparer as an expert upon a finding that the methods employed in making those conclusions were scientifically valid and acceptable. Accordingly, it is the finding of this Court that the report is not appropriate evidence in opposition to the motion for summary judgment and will be stricken.

## III. MOTION FOR SUMMARY JUDGMENT:

### A. Law on Summary Judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it be-

lieves demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco,* 76 F.3d 651 (5th Cir.1996), (citing *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 912–13 (5th Cir.)) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.,* 475 U.S. at 588, 106 S.Ct. 1348. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. The Court's Analysis:

The plaintiffs contend that the Motion for Summary Judgment should be denied because overgrown bushes on the railroad's right of way partially obscured Holland's vision and secondly, that the crossing should have had active control devices rather than crossbucks. It is the opinion of this Court that the defendants have adequately shown that no genuine issues of material fact exist, and the plaintiffs have failed to set forth specific facts showing otherwise.

Louisiana law applicable to Railroad Grade Crossings is located at La.R.S. 32:268 et seq. Louisiana law requires a railroad to install and maintain crossbucks at public crossings and requires a train to sound its horn 300 yards prior to a public crossing. R.S. 32:168–9. A motorist, on the other hand, must yield to any approaching train. R.S. 32:171. Upon approaching a railroad crossing, containing a crossbuck sign, the motorist must slow down to a speed reasonable under the circumstances or stop if necessary at a point "where the driver or operator has a clear view of the approaching train." R.S. 32:175.

The affidavit of Bill Shrewsberry, Louisiana Department of Transportation and Development (DOTD) civil engineer charged with the administration of the Federal Railroad Safety Program, states that Alligator Lane is not within the state highway system and that the crossing is a private crossing and does not fall under the Federal Railway Upgrade Safety Program. Likewise, the affidavit of Buddy Ridgel, the Acting Superintendent of the City of Hammond Streets Department states that Alligator Lane is a private road and the railroad crossing at Alligator Lane is a private crossing. He further states that neither the City of Hammond nor the Parish of Tangipahoa have any maintenance duties whatsoever in relation to Alligator Lane or the crossing there. The plaintiff submitted no evidence to the contrary, as such, the crossing is found to be a private crossing.

■ The Court in *LeJeune v. Union Pacific R.R.,* 712 So.2d 491 (La.1998) recognized that it is well established in our jurisprudence that a train crew can presume that vehicles approaching the crossing will obey the law and stop in time to avoid an accident. The train is not required to slow down at all or attempt to stop upon seeing an approaching vehicle. It is only if a crew member notices that the approaching car is oblivious to the oncoming train or for some other reason does not intend to stop that the crew becomes responsible for immediately doing everything in its power to avert a collision. *Id.* The affidavits of the conductor and engi-

neer show that the train was approximately 100 feet from the crossing when Holland drove the 18–wheeler to within 4–5 feet from the crossing. It was then that it became apparent that he was not going to yield to the train and it was at this point that the brakes on the train were applied; however, there was not enough room for the train to stop prior to impact. Holland testified by deposition that he did not see the train prior to impact and further that he has no evidence to suggest that the crewmembers were not keeping a proper lookout.

■ Moreover, the law provides that when a train is operating within the applicable FRA speed limits, any claim based upon excessive speed is preempted. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The affidavits submitted by the defendants establish that the train involved in this accident was traveling on a Class 4 track, which under FRA regulations may travel at a maximum speed of 60 m.p.h. The affidavits further establish that the train was traveling at 25 m.p.h. at the time leading up to Alligator Lane, and at the time prior to applying the brakes. Accordingly, the plaintiff conceded in open Court that any claims it had based on excessive speed of the train were preempted. Additionally, the affidavits of the engineer and conductor of the train, established that the horn was blown over 900 feet from the crossing at Alligator Lane. Holland testified that he did not hear the horn being blown, which in no way establishes that the horn was not in fact blown, as attested to by the conductor and engineer. The evidence submitted clearly establishes that the train operators maintained a proper lookout, sounded the horn and traveled well within the federal regulations. The plaintiff, on the other hand, submitted no evidence to suggest that the train was being driven in a reckless manner. As such, no genuine issues of material fact exist in this regard.

■ As stated previously, a railroad is only required to erect crossbucks at a crossing. R.S. 32:168. The only exception to this is when the crossing constitutes a "dangerous trap". *Burk v. Illinois Cent. Gulf R.R. Co.*, 529 So.2d 515 (La.App. 1st Cir.1988). The dangerous trap doctrine provides that "if a crossing is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has view of the oncoming train, the railroad will be held liable unless it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warning devices." *Id.* The Court found that the doctrine did not apply in that case because the evidence established that (1) the motorist had a clear view of the tracks at a point in which would not have placed the motorist in a perilous position; and (2) the motorist was familiar with the prevailing conditions at the crossing. *Id.* It is undisputed that cross bucks were present and visible at the crossing at the time of this accident. The affidavit of Herman Newell opines that the plaintiff could have given himself a clear view of the tracks at a point short of the crossbuck sign more than fifteen (15) feet from the crossing and thus, obviously, at a point which would not place him in a position of peril. Secondly, the plaintiff testified that he did not need any other warning devices or signalization. He was very familiar with the crossing and did not need a sign there to tell him to stop to look for trains coming down the track. Holland stated in his deposition that he had driven across that crossing eight times a day for the three to four weeks preceding this accident. Further, the plaintiff testified that the crossing itself was in good shape and there was nothing about the condition of the crossing surface itself that caused any problems with the operation of his vehicle that day or that contributed to the accident. As such, this Court finds that the crossing at Alligator Lane does not constitute a dangerous trap and Illinois Central had no

duty to erect additional warning signals other than crossbucks.

The plaintiffs also allege that bushes on the railroad's right of way obscured "part of the train". Louisiana law recognizes that partial obscurement may exist at railroad crossings and the duty has been placed on the motorist to place himself in a position where he has a clear view of any approaching train and in fact heightens the duty on the motorist when there are obscurements. *LeJeune*, supra. The plaintiff could have placed himself in a position where he could have clearly seen down the entire length of the track. The photographs taken and submitted as Attachment # 3 to Herman Newell's affidavit clearly show that there was ample view down the tracks to see a train coming. There are no obstructions to viewing a train coming down the track toward the crossing. More importantly, Holland testified that he was able to see down the tracks when he stopped and that his vision was not obscured. As such, the existence of the bushes yards from the crossing do not present a genuine issue of fact sufficient to preclude a summary judgment. Accordingly,

**IT IS ORDERED** that the Motion to Strike Exhibit # 3 of the Plaintiffs' Supplemental Memorandum in Opposition to Summary Judgment, filed on behalf of the defendants, is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment, filed on behalf of the defendants, is hereby **GRANTED.**