**J.C.B. SALES LTD., Plaintiff,**

**and**

**New Holland North America, Inc. and Ford New Holland, Plaintiffs,**

**and**

**Caterpillar Inc., Plaintiff,**

**and**

**Land Rover Exports Ltd., Plaintiffs,**

**v.**

**M.V. SEIJIN, her engines, boilers, etc., in rem, San Clemente Shipping S.A., Wallenius Lines (Wallenius Lines North America Inc.), in personam, Defendants.**

**Nos. 95 Civ. 10836 (MP), 96 Civ. 1102 (MP), 96 Civ. 1153 (MP) and 96 Civ. 1304 (MP).**

United States District Court, S.D. New York.

April 16, 1996.

Hill Rivkins Loesberg, O'Brien Mulroy & Hayden by Alan S. Loesberg, T.E. Willoughby, New York City, for Plaintiffs J.C.B. Sales Ltd., Caterpillar, Inc. and Land Rover Exports Ltd.

Graham, Miller, Neandross, Mullin & Roonan by Jeffrey L. Neandross, New York City, for Plaintiffs New Holland North America & Ford New Holland Canada.

Wright, Constable & Skeen by James D. Skeen, Baltimore, MD, for Plaintiff Caterpillar, Inc.

Cichanowicz, Callan & Keane by Paul M. Keane, New York City, for Defendant Wallenius Lines.

Walker & Corsa by Christopher H. Mansuy, New York City, for Defendants M.V. Seijin and San Clemente Shipping S.A.

## OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MILTON POLLACK, Senior District Judge.

Four suits[1] have been consolidated for non-jury trial, presenting admiralty and maritime claims for monetary damages to cargo carried under contract by the M/V Seijin (the "vessel"), to Baltimore, Maryland in March, 1995. The claims name as defendants, the vessel, its charterer Wallenius Lines North America Inc., a Swedish corporation, and the owner of the vessel, San Clemente Shipping, S.A. (of Panama). Wallenius had leased the contract of affreightment with N.Y.K. Lines to carry the cargo here involved.

On February 28, 1995, plaintiff Caterpillar loaded tractors on the vessel in Antwerp destined to Southampton and received a Datafreight Receipt from Wallenius. On March 4, 1995, Caterpillar received another Datafreight Receipt at Southampton for its cargo of tractors for shipment to Baltimore, along with cargo to be carried on the vessel for plaintiff J.C.B. Sales Ltd., for which the latter received a similar Datafreight Receipt from Wallenius. An additional amount of cargo destined in part for Halifax and in part for Baltimore was loaded on the vessel at Southampton for plaintiff Landrover. The Southampton Datafreight Receipts covered the shipment of 81 items of construction equipment and 24 tractors. After the vessel's stopover in Halifax, the balance of the cargo was delivered at Baltimore on March 18, 1995, in seriously damaged condition which impaired its value.

The cargo was carried pursuant to contracts prepared and executed by Wallenius Lines, and expressed in non-negotiable Datafreight Receipts, which expressly assert that they are not documents of title, but are to be deemed to be contracts for carriage from the foreign port to the U.S.A.

The face of the receipts contains the following:

The carrier's standard conditions of carriage incorporate the Hague Rules contained in the Brussels Convention dated 25 August, 1924 and any compulsorily applicable national enactment of these rules.

On the reverse side of the Receipts an excerpt from the carrier's conditions of carriage is set forth giving of the scope of the carrier's liability, reading as follows:

2. Responsibility.

The Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels, the 25 August, 1924 as enacted in the country of shipment shall apply to this Contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsory [sic] applicable, the terms of the said convention shall apply.[2]

---

1. Plaintiffs New Holland North America Inc. and Ford/New Holland Canada Ltd. settled with defendants prior to trial and a Stipulation of Discontinuance was duly filed.

2. In the Wallenius Lines Datafreight Receipt for Caterpillar Inc. U.S.A., issued in Antwerp, the similar provision reads as follows:

RESPONSIBILITY

11. Clause Paramount.

(1) When the transport commences with carriage for water, the Carrier shall not be liable for loss or damage to the Goods occurring before loading or after delivery. During any periods of carriage by water under the BL, the carriage shall be subject at all such times to

(a) The Hague Rules, meaning the provisions of the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels, the 25 August, 1925, as enacted in the country of shipment, or if no such enactment is in force as enacted in the country of destination, but in respect of shipments in which no such enactments are compulsorily applicable, the terms of the US Carriage of Goods by Sea Act approved on the 18 April, 1936 (COGSA) shall be considered incorporated herein as if set forth at length, or

(b) The Hague Visby Rules, meaning the Hague Rules As Amended by the Protocol, signed at Brussels, on the 23 February, 1968 in courts where they apply compulsorily.

The United Kingdom, the country of shipment, initially enacted Hague Rules in 1924, but denounced them on June 13, 1977 and enacted in their place the Hague Rules with Visby Amendments on June 23, 1977. The Carriage of Goods by Sea Act of England applicable to the shipments herein consists of the 1924 Convention, as amended by both a 1968 Protocol referred to as the Visby Amendments, and a 1979 Protocol.

The Court finds that the so-called Hague–Visby Rules were intended by the parties to these suits to be incorporated into and applicable to the contracts of carriage. Indeed, the printed form of the Datafreight Receipt given to Caterpillar for its part of the carriage of goods from Antwerp, expressly so stipulates. *See fn 2, supra.* The printed Receipts issued for parts of the same ultimate carriage at about the same time by the same Wallenius Lines give cogent evidence of an intent to imply the same terms of carriage for the entire foreign shipment of the goods involved herein.

■ By specifically stating that the Datafreight Receipts are not documents of title and cannot therefore be Bills of Lading, COGSA is effectively removed from consideration herein. *Matsushita Elec. Corp. v. S.S. Aegis Spirit,* 414 F.Supp. 894, 901 (W.D.Wash.1976). The only contracts of carriage to which COGSA applies are those "covered by a bill of lading or any similar document of title." 46 U.S.C.App. § 1301(b).

The Carriage of Goods by Sea Act of the United States ("COGSA") is the American version of the "Hague Rules." [3] At the time of its enactment in 1936, it was intended to benefit shippers and consignees by the high package limitation of $500. With the adoption abroad of the so-called "Visby Rules" with a limitation of approximately $800 per package, the advantage to American consign-

ees of COGSA was lost and, more importantly, there is an additional limitation under Visby of approximately $2.40 per kilo of cargo. The United States has not adopted the Visby Amendments which are not rules in themselves, but protocols amending the Hague Rules.

While 46 U.S.C.App. § 1312 provides that COGSA shall apply to all contracts for carriage by sea to and from ports of the United States in foreign trade, 46 U.S.C.App. § 1306 makes clear that, in certain circumstances, parties may reach an agreement outside the strictures of United States law:

> ... the carrier, and a shipper, shall, in regard to any particular goods be at liberty to enter into any agreement in any terms as to the responsibility and liability of the carrier for such goods.

This section is applicable when, as here, (i) no bill of lading is used; (ii) the terms agreed upon are in a "receipt which shall be a non-negotiable document and shall be marked as such"; and (iii) the shipment is "such as reasonably to justify a special shipment." *Id.*[4]

■ The Datafreight Receipts in this case define the Hague Rules as enacted in the country of shipment as those applicable herein. This exact language has been held· by three courts to represent the carrier's intent to incorporate the Hague–Visby scheme (Hague Rules as amended) if that scheme was enacted in the country of shipment. *Ilva USA v. M/V Botic,* 1993 A.M.C. at 240, 241, 1992 WL 296562; [5] *A.T.I.C.A.M. v. Cast Europe Ltd.,* 662 F.Supp. 1443, 1445 (N.D.Ill. 1987); [6] *Associated Metals & Minerals Corp. v. M/V Arktis Sky,* 1991 A.M.C. 1499, 1991 WL 51087 (S.D.N.Y.1991), *vacated and remanded on other grounds,* 978 F.2d 47 (2d Cir.1992).[7]

---

**3.** 46 U.S.C.App. §§ 1300–1315.

**4.** The defendants contend that regardless of this provision, parties can never truly escape United States law because the Harter Act has statutory application even if COGSA does not. This argument overlooks case law holding that the Harter Act generally governs only domestic trade. *North River Ins. Co. v. Fed Sea/Fed Pac Line,* 647 F.2d 985 (9th Cir.1981) ("[t]o the extent that the

Harter Act governed international trade leaving from or entering American ports, it was suspended in 1936 by the passage of [COGSA]").

**5.** Applying the Hague–Visby scheme of Italy.

**6.** Applying the Hague–Visby scheme of France.

**7.** Applying the Hague–Visby scheme of Spain.

All those courts emphasize that the reference to the 1924 Hague Rules "as enacted," means that the foreign law then in force in the country of shipment is incorporated into the agreement of the parties. The Court in *Cast Europe* extensively analyzed bill of lading language identical to the Wallenius' Datafreight Receipt and concluded:

> To deal with [the second sentence of the Responsibility Clause] Cast Europe and Grand Trunk acknowledge that the contractual references ... to 'corresponding legislation' *must mean something other than the literal 1924 Rules.* They would paint themselves out of the corner created by such acknowledgement by arguing those quoted terms refer to the variants on those Rules first adopted in the country in question, irrespective of when that first adoption took place (it will be observed, for example, that such first adoption in France did not take place until more than a dozen years after the 1924 Brussels Convention). *(Emphasis added.)*
>
> But that necessary concession by Cast Europe and Grand Trunk really does them in. Once they confirm (as they must), that *some* variants on the 1924 Rules *must* be meant by the opening description of the Hague Rules in B/L ¶ 3, they have established that the 1924 date is a mere referent rather than a literal incorporation by reference—a descriptive rather than a restrictive term. *Cast Europe,* 662 F.Supp. at 1448 *(Emphasis in original.)*

The International Conference on Maritime Law first met at Hague in 1923 and the rules which it adopted were usually called the Hague Rules. As mentioned above, the rules were subsequently revised in 1968 and are now known as the Hague–Visby Rules. In the United Kingdom, the rules are set out in the Carriage of Goods by Sea Act 1971 which gives effect to the Hague–Visby Rules. *See* 43 *Halsbury's Laws of England* 522–23 (4th ed. 1983).[8] The opening words of the British Carriage of Goods by Seas Act are that it is "an Act to Amend the Law with Respect to the Carriage of Goods by Seas." The pertinent part of the Act is as follows:

1. Application of Hague Rules as amended.

(i) In this Act, "the Rules" means the International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on the 25th August 1924, as amended by the Protocol signed at Brussels on the 23rd February 1968 and by the Protocol; signed at Brussels on December 21st, 1979.

\* \* \* \* \* \*

(vi) Without prejudice to Article X(c) of the Rules, the Rules shall have the force of Law in relation to:

(a) any bill of lading if the contract contained in or evidenced by it expressly provides that the rules shall govern the contract, and

(b) any receipt which is a non-negotiable document marked as such if the contract contained in or evidenced by it is a contract for the carriage of goods by sea which expressly provides that the Rules are to govern the contract as if the receipt were a Bill of Lading, ...

It is clear that any reference to the Hague Rules as enacted in England must also include all amendments to those Rules that have been enacted into British law. *Insurance Company of North America v. M/V Atlantic Corona,* 704 F.Supp. 528, 530 (S.D.N.Y.1989).

Thus, the Datafreight Receipt, by incorporating the [1924] Hague Rules "as enacted in the country of shipment," incorporates the Hague Rules in the manner that England has enacted them: to wit, including the Visby Amendments and the 1979 Protocol. *Id.; Cast Europe,* 662 F.Supp. at 1448; *M/V Arktis Sky,* 1991 A.M.C. at 1506, 1507; *M/V Botic,* 1993 A.M.C. at 241. Had the carrier intended to limit the incorporation to only the 1924 Hague Rules without amendment, the contract of carriage should have stated the incorporation of "the 1924 Hague Rules

---

**8.** Belgium has also enacted the Hague rules with the Visby Amendments. 6 *Benedict on Admiral-* *ty,* Doc. 1–2 at 1–30; Doc. 1–3 at 1–32.4 (1996).

as *first enacted* in the country of shipment.[9] *Cast Europe* at 1448:

> After all, the Visby Amendments themselves are specifically intended, by the countries adopting them, to be *part* of the Hague Rules. (*Emphasis in original.*)

The defendants cite several decisions in the Southern District which reached different results than that of *Cast Europe*.[10] Defendants argue that these cases, *Sunds Defibrator, Inc. v. The M/V Atlantic Star*, 1986 A.M.C. 368, 1983 WL 1569, at *1 (S.D.N.Y.) and *I.N.A. v. S/S Sealand Developer*, 1990 A.M.C. 2967, 1989 WL 85789, at *1 (S.D.N.Y. 1989) signify that "[t]he prevailing rule in this district is that a mere reference to the "Hague Rules", without some explicit reference to the Visby Amendments [thereof], does not include Hague–Visby." This contention ignores the holdings of *Daval Steel Prods. v. M/V Acadia Forest*, 683 F.Supp. 444 (S.D.N.Y.1988), and *Francosteel Corp. v. M/V Deppe Europe*, 1990 WL 121683 (S.D.N.Y.). In both of these cases, courts in the Southern District applied the higher package limitations of the Visby Amendments even though neither contract of carriage explicitly referred to the Visby Amendments. These decisions involved contract language which referred to the Hague Rules and "such Act, Statute, Ordinance or law and Rules thereto annexed." This language is similar to the "as enacted" language in this case in that it too acknowledges the possibility of alteration from the original text of the 1924 Hague Rules as signed in Brussels.

The result in *Daval* and *Francosteel* was duplicated in the *M/V Arktis Sky* case. In this case, a Southern District court found that the Visby limitations applied, but based its holding not on the "as enacted" language of the General Paramount clause, but on a second paragraph (not included in all of the Datafreight Receipts, except the one referred to in footnote 2) which referred specifically to the Hague–Visby Rules. Thus, *M/V Arktis Sky* is not identical to each receipt in the present case, but it nonetheless is useful in confirming that the adoption of the Visby Amendments does not signify that the Hague Rules are no longer in force. *Id.* at *5 ("the Hague Rules are compulsorily applicable in Spain, the country of shipment, and Spain has also adopted the Visby Amendments"). Furthermore, this decision confirms the *Cast Europe* notion that contractual ambiguity should be construed against the drafter:

> As the *Cast Europe* court recognized in holding that a bill of lading subject to the Hague Rules would also include the Visby Amendments, since defendants prepared the bill of lading, it could have specifically excluded either the Visby Amendments or the 1979 Protocol from consideration if they wanted to. A similar conclusion is warranted here. The defendants' failure to exclude the Visby Amendments from consideration ... provides the Court with further support to interpret the phrase "respective legislations" to include whatever version of the Visby Amendments that was in effect in the country of shipment at the time the bill of lading was signed ... the Court concludes that the Bill of Lading not only forms the requisite contractual agreement to raise the per package limitation above COGSA's $500 per package limitation, but that it should be interpreted to adopt both the Visby Amendments and the Protocol.

*Id.*

In view of these recent Southern District cases, the earlier holdings of *I.N.A. v. S/S*

---

**9.** The court in *M/V Arktis Sky* further applied the *contra proferentum* rule of contract construction to the extent there exists any ambiguity. 1991 A.M.C. at 1507.

**10.** In recent years, courts in the Southern District of New York have reached varying results when confronted with the question of whether a United States court may apply the damage limitations of the Visby Rules to a shipment from a foreign nation to the United States. *See Sunds Defibrator, Inc. v. The M/V Atlantic Star*, 1986 A.M.C. 368, 1983 WL 1569 (S.D.N.Y.1983); *Daval Steel Products v. M/V Acadia Forest*, 683 F.Supp. 444, 1988 A.M.C. 1669 (S.D.N.Y.1988); *I.N.A. v. The Atlantic Corona*, 704 F.Supp. 528, 1989 A.M.C. 875 (S.D.N.Y.1989); *I.N.A. v. The Atlantic Corona*, 704 F.Supp. 528, 1989 A.M.C. 875 (S.D.N.Y.1989); *I.N.A. v. The Sealand Developer*, 1990 A.M.C. 2967, 1989 WL 85789 (S.D.N.Y.1989); *Francosteel Corp. v. The Deppe Europe*, 1990 A.M.C. 2962, 1990 WL 121683 (S.D.N.Y.1990); *Associated Metals & Minerals Corp. v. The Arktis Sky*, 1991 A.M.C. 1499, 1991 WL 51087 (S.D.N.Y.1991) *vacated and remanded on other grounds*, 978 F.2d 47, 1993 A.M.C. 509 (2d Cir.1992)

*"SEALAND DEVELOPER"*, 1990 A.M.C. 2967, 1989 WL 85789 (S.D.N.Y.), and *Sunds Defibrator, Inc. v. The M/V Atlantic Star* are not nearly as forceful as the defendants contend. Both of these cases held that contractual provisions regarding liability which referred to the Hague Rules "and any legislations making those rules compulsorily applicable" could not be interpreted to include the Visby Amendments. These decisions relied on language "dramatically different" from the "as enacted" language of this case. *See Cast Europe Ltd.*, 662 F.Supp. at 1447. Moreover, their conclusion that the original Hague Rules are "not similar" to the Hague Rules as revised by the Visby Amendments is misguided. As set forth earlier, countries adopting the Visby Amendments, such as the U.K. and Italy, state explicitly their intent that the altered enactments be considered revisions, not eliminations, of the Hague Rules. Furthermore, the similarities of the new enactments to the original enactments outnumber the differences. *See Cast Europe*, 662 F.Supp. at 1447; *M/V Botic*, 1992 WL 296562, at *1.

Finally, the *M/V Atlantic Star* decision, which served as a basis for the later *Sealand* decision, interpreted the parties' intent based on the fact that in 1983 "the great majority of the maritime nations that [had] adopted the Hague Rules [had] not adopted the Visby Amendments." *M/V Atlantic Star*, 1983 WL 1569, at *2. That court argued that since Visby had not been widely adopted the plaintiff could not argue that a reference to the Hague Rules universally implied incorporation of the Visby Amendments. This reasoning is undermined by the current application of the Visby Amendments in most of the major European trading partners of the United States. Enactments of the Hague Rules which include the Visby Amendments are in effect in at least 20 nations, including not only the United Kingdom, but also Belgium, Denmark, Finland, France, Germany, Italy, the Netherlands, Norway, and Spain. In this context, a contract for shipping between Western Europe and the U.S. which refers to the Hague Rules, as supposedly excluding the Visby Amendments, effectively would bar the incorporation of provisions of any law other than U.S. law. If this contract was supposed to be governed by only provisions found in U.S. law, this Court would be forced into the illogical conclusion that the first sentence of the Responsibility Clause in the contract of carriage is meaningless as written.[11]

In order to avoid arguing that the first sentence is meaningless, the defendants contend, instead, that this sentence simply represents "a conflicting general term." They then argue that since there are conflicting general terms, this Court should, under traditional principles of contract construction, look to the more specific Unit Limitations Clause which states that "[t]he carrier shall be entitled to limit his liability ... where U.S. Law applies, to U.S. $500 per package."

This argument is valid only if there are, in fact, conflicting general terms. However, there is no such conflict. The first sentence of the Responsibility Clause clearly refers to the package limitations of the United Kingdom, the country of shipment, and this sentence is not contradicted by the Unit Limitations Clause. The Unit Limitations Clause's provision as to when U.S. law applies is inapplicable because the parties agreed in the Responsibility Clause that British law would apply.[12]

---

11. For a discussion of Southern District case law, see William Tetley, "Acceptance of Higher Visby Liability Limits by U.S. Courts," Journal of Maritime Law and Commerce, Vol. 23, No. 1, January, 1992. Tetley argues that the *M/V Atlantic Star* and *Sealand* decisions were decided inaccurately in view of traditional choice-of-law principles and government interest analysis. Ironically, defendant Wallenius relies on Tetley's treatise, Marine Cargo Claims (3d ed. 1988) to supplement its claims on various other points of law.

12. The defendants cite *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200, 1967 A.M.C. 589 (2d Cir. 1967) for the proposition that when COGSA applies to a contract of carriage, it voids any contrary choice of law provision. First, COGSA does not apply to this contract. Second, this argument misstates the holding of *Indussa*, which concerned only the validity of foreign forum clauses, and did not relate to foreign choice of law provisions which, if the foreign law contains a higher package limitation, are expressly permitted under either COGSA §§ 1304(5) or 1306.

**1174**

Defendant's application to enforce a $500 package limitation on the unamended version of the 1924 Hague Rules is in all respects denied. The parties have stipulated on the quantum of damages, converted into dollar amounts as of the judgment date (the date of stipulation).

The Hague–Visby scheme of English law applies to the limitation of the carrier's liability. The laws of the country of shipment, the United Kingdom, were intended by the parties to be incorporated into the contracts of carriage.

Separate judgments for each separate plaintiff should be settled on three days' notice. Pre-judgment interest is awarded at the rate of short-term, risk-free U.S. Treasury obligations.

SO ORDERED.