United States Court of Appeals,

Eleventh Circuit.

No. 97-8278.

ITEL CONTAINER CORPORATION, Plaintiff-Appellee,

v.

M/V "TITAN SCAN", her engines, boilers, etc.;  Modul Carriers A.G. & Co. "TITAN SCAN" Schiffahrts K. G.;  Mammoet Shipping, B. V., Defendants-Cross-claimants-Appellees,

Sky Shipping Ltd. f.k.a. Candyline Ltd., Defendant-Cross-claimant-Appellant.

May 1, 1998.

Appeal from the United States District Court for the Southern District of Georgia.

Before COX, DUBINA and BLACK, Circuit Judges.

COX, Circuit Judge:

Sky Shipping Ltd., formerly known as Candyline Ltd. ("Candyline") appeals following the district court's judgment finding the liability limits of the English Hague-Visby Rules applicable to Candyline's contract of carriage with Itel Container Corporation ("Itel") and the liability limits of the United States Carriage of Goods by Seas Act (U.S.COGSA) applicable to Candyline's contract of carriage with Mammoet Shipping B.V. ("Mammoet").  We affirm in part, reverse in part, and remand.

*I. BACKGROUND*

Itel is a container leasing company.  In 1990, Itel purchased 198 refrigerated containers in Japan for use in international commerce.  Subsequently, Itel negotiated with a representative from Candyline for the shipment of the containers from Japan to Savannah, GA. Candyline operates as a non-vessel operating common carrier—an entity that contracts with a shipper as carrier, but then enters into a separate agreement with a vessel owner or charterer for actual carriage of the shipper's

cargo. After negotiating the contract, Itel received a signed copy of a Conline Booking Note evidencing the terms and conditions of the shipment. Along with the boilerplate terms, the Booking Note contained an addendum with additional typewritten terms, including Clause 10, which states "English law to apply." Candyline's agent in Japan then prepared and delivered to Itel's Japanese agent a Liner Bill of Lading. The Bill of Lading incorporated by reference the Booking Note, stating "Terms and Conditions as per Conline Booking Note Dated 30th August, 1990." (R.2-46-5, 6 at ¶ 24). The Bill of Lading contained a General Paramount Clause providing for the application of the Hague Rules in some situations and for the incorporation of Hague-Visby Rules in others, where applicable.[1] Clause 3 of the Bill of Lading was a forum selection clause providing for any disputes arising under the Bill of Lading to be decided in the country where the carrier has its principal place of business, under that country's laws. Candyline's principal place of business was in England.

As a non-vessel operating common carrier, Candyline contracted with Mammoet for the actual carriage of the containers. Mammoet managed the M/V TITAN SCAN, which was owned by Modul Carriers A.G. & Co. ("Modul"). Candyline and Mammoet executed a Conline Booking Note and Bill of Lading containing terms identical to those found in the Itel/Candyline agreement with the sole exception of the cost of the freight. The Bill of Lading was issued in Japan, and like the Itel/Candyline Bill of Lading, provided for "Terms and Conditions as per Conline Booking Note Dated 30th August 1990."

---

[1]The Hague Rules arose from the International Convention of 1924 and were ratified in the United States in 1937. The United States Carriage of Goods by Sea Act (U.S.COGSA) represents the domestic enabling of the Hague Rules. The "Protocol to Amend the Hague Rules of 1924," or the Visby Amendments, were drafted in 1968 and were not adopted by the United States. These Amendments raised the per package limitation on liability. *See Associated Metals & Minerals Corp. v. M/V ARKTIS SKY,* 1991 A.M.C. 1499 (S.D.N.Y.1991). During the relevant time period, England had adopted the Visby Amendments, or Hague-Visby Rules, and Japan had not. (R.4-85-17).

The containers were transported from Japan to Panama without incident. In Panama, the ship made an unscheduled stop and the containers were restowed. During the trip from Panama to Savannah, the containers came loose during heavy weather. Twenty were lost overboard and six others severely damaged.

Itel sued the M/V TITAN SCAN, *in rem,* and Candyline, Modul, Mammoet, and Autoridad Portuaria Nacional, *in personam,* seeking to recover damages for the lost and physically damaged containers.[2] Candyline then filed a cross-claim for indemnity against Mammoet. The district court held that Itel was entitled to recover damages from Candyline and that Candyline's liability was determined by the Hague-Visby Rules, a statutory regime adopted in England that provides higher liability limits than United States law provides. The district court also held that Candyline was entitled to indemnity from Mammoet, but that Mammoet's liability was limited by the U.S. COGSA. Because the U.S. COGSA contains a lower cap on liability than the Hague-Visby Rules, Candyline was not indemnified the full amount Candyline paid Itel.

## II. CONTENTIONS OF THE PARTIES

The parties do not dispute that Candyline breached its contract with Itel and therefore stands liable to Itel, or that Mammoet must indemnify Candyline as limited by the relevant statutory scheme. Rather, Candyline contends that the district court erred in concluding that Candyline's liability to Itel was subject to the liability limits of the Hague-Visby Rules as enacted in England, whereas Mammoet's indemnity to Candyline was restricted by the liability limits contained in the U.S. COGSA. Candyline argues that there is no legal basis for distinguishing between the Itel/Candyline and Candyline/Mammoet agreements and that they were intentionally created as

---

[2]Autoridad is a stevedoring company that was never served with process and was therefore dismissed from the lawsuit pursuant to Fed.R.Civ.P. 4(m). Itel's claims against Modul, Mammoet, and the TITAN SCAN are not at issue in this appeal.

"back to back" contracts to be governed in all aspects by the same statutory regime. Candyline also asserts that the district court erred in finding the liability limits contained in the Hague-Visby Rules applicable to the Itel/Candyline contract. Candyline maintains that while the district court correctly found that the parties intended that English law be used to determine the controlling liability scheme for the Itel/Candyline contract, the district court incorrectly concluded that English law calls for the application of the liability limits of the Hague-Visby Rules. Instead, Candyline asserts that under English law, the liability limits of the Japanese COGSA, which did not adopt the Hague-Visby Rules, would apply.

Itel maintains that Candyline's liability under the Itel/Candyline agreement should be governed by the English Hague-Visby Rules, arguing that Clause 10 of the Booking Note ("English law to apply") and Clause 3 of the Bill of Lading (forum selection clause) mandate the application of English law. Itel also contends that its contract with Candyline falls within the purview of Article X(c) of the Hague-Visby Rules, calling for the application of those rules when the contract contained in or evidenced by the bill of lading so provides.[3]

Because Mammoet was not a party to the Itel/Candyline agreement, it does not address the district court's conclusion that the liability limits of the Hague-Visby Rules apply to that agreement.

---

[3]Article X of the British Carriage of Goods by Sea Act of 1971 states:

> The provisions of these Rules [Hague-Visby] shall apply to every bill of lading relating to the carriage of goods between ports in two different States if:
>
> (a) the bill of lading is issued in a contracting State, or
>
> (b) the carriage is from a port in a contracting State, or
>
> (c) the contract contained in or evidenced by the bill of lading provides that these Rules or legislation of any State giving effect to them are to govern the contract.

Instead, Mammoet urges this court to affirm the district court's determination that the Itel/Candyline and Candyline/Mammoet contracts must be construed separately and that the liability limits contained in the U.S. COGSA applies to the Candyline/Mammoet contract. Mammoet notes that Candyline failed to include in the agreement with Mammoet any language suggesting the existence of a "pass through" liability scheme or "back to back" agreement. Further, Mammoet maintains that the Candyline/Mammoet agreement does not evidence a clear intent to abrogate the liability limits of the U.S. COGSA in favor of a higher liability limit.

*III. DISCUSSION*

U.S. COGSA applies compulsorily "to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C.App. § 1312. U.S. COGSA provides that neither the carrier nor the ship are liable "for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." 46 U.S.C.App. § 1304(5). U.S. COGSA permits the parties to agree by contract to a higher liability limit. However, the parties' intent to apply the higher limit must be clear; if the question of whether the parties agreed to a higher liability limit is "irretrievably ambiguous," then U.S. COGSA applies by default. *See Valmet Materials Handling Equip., Inc. v. Nedlloyd Lijnen B.V. Rotterdam,* 1993 A.M.C. 1243, 1246 (M.D.Fla.1993).

The district court concluded that, with respect to the Itel/Candyline contract, the Hague-Visby statutory scheme as enacted in England provided the appropriate cap on Candyline's liability to Itel. In making this determination, the district court considered that (1) the Bill of Lading was issued in Japan; (2) Candyline, the "carrier" for purposes of the transaction, had its principal place of business in England; (3) previous courts had construed the same General Paramount Clause as

evidencing an intent to agree to a higher liability limit; and (4) Clause 10 ("English law to apply") incorporated a foreign legal regime with a higher liability limit than that under U.S. COGSA.

With respect to the Candyline/Mammoet contract, the district court rejected Candyline's argument that the two contracts stood "back to back," thereby creating a "pass through" liability scheme. The court then concluded that unlike the Candyline/Itel agreement, the Candyline/Mammoet agreement did not evidence an intent to abrogate the package limitations contained in the U.S. COGSA in favor of a foreign regime with higher liability limits. The court noted that the "carrier" for purposes of the Candyline/Mammoet agreement was Mammoet, whose principal place of business is Amsterdam. Thus, while the presence of Clause 3 (forum selection clause) in the Itel/Candyline Bill of Lading suggested the application of British law, it did not with respect to the Candyline/Mammoet agreement. The court also noted that the language of Clause 10 of the Booking Note ("English law to apply") is ambiguous and is not, in itself, dispositive of the parties' intent to displace the liability limits of the U.S. COGSA. Accordingly, because Clause 10 called for the application of English law, Clause 2 (General Paramount Clause) pointed in the direction of Japanese COGSA, and Clause 3 (forum selection clause) called for the application of Dutch law, the court held that Candyline failed to meet its burden of proving Mammoet's unqualified assent to a limit above the $ 500 ceiling. Thus, Mammoet's reimbursement to Candyline for the damages Candyline paid Itel was restricted by the liability limits of the U.S. COGSA.

The district court's findings of fact shall not be set aside unless clearly erroneous. *See Reich v. Dep't of Conservation & Natural Resources,* 28 F.3d 1076, 1082 (11th Cir.1994). We review the district court's application of law to the facts of the case *de novo. See id.* at 1083 (citing *Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.,* 3 F.3d 1472, 1475 (11th Cir.1993)).

*A. Are the Itel/Candyline and Candyline/Mammoet Agreements Separate Transactions?*

We agree with the district court's conclusion that the Itel/Candyline and Candyline/Mammoet contracts must be evaluated as two separate transactions. The evidence is undisputed that Itel and Mammoet had no communication during the negotiation of the respective contracts of carriage. Further, while Candyline insists that its intent in structuring the contracts identically was to create a "pass through" system of liability, Candyline failed to include language to that effect in the Candyline/Mammoet agreement. Looking at the language of the contract, we find no evidence to support Candyline's assertion that the two contracts must be evaluated as a single transaction.

Our analysis does not end, however, with the determination that the contracts must be evaluated separately. The real question we must answer is whether the district court correctly concluded that the differences in the Itel/Candyline contract and the Candyline/Mammoet contract justify the application of different liability limitations.

*B. Do the Liability Limits of the English Hague-Visby Rules Apply to the Itel/Candyline Agreement?*

We first consider whether the district court correctly concluded that Hague-Visby Rules, as enacted in England, govern the amount of Candyline's liability to Itel pursuant to the Itel/Candyline contract. Relevant to our determination is Clause 2 of that contract, the General Paramount Clause, which provides:

> The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading ... as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable the terms of the said Convention shall apply.

> *Trades where Hague-Visby Rules apply.*

> In trades where ... the Hague-Visby Rules [ ] apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in charge of another Carrier, and to

deck cargo and live animals.

Also relevant to our determination is Clause 3 of the Bill of Lading, which provides:

> Any dispute arising under the Bill of Lading shall be decided in the country where the carrier has his principal place of business, and the laws of such country shall apply except as provided elsewhere herein.

The district court noted that in the past, General Paramount Clauses identical to this one have been interpreted as an agreement between the parties to have a liability limit higher than that provided under U.S. COGSA. *See Associated Metals & Minerals Corp. v. M/V ARKTIS SKY,* 1991 A.M.C. 1499 (S.D.N.Y.1991); *Pyropower Corp. v. M/V ALPS MARU,* 1993 A.M.C. 1562 (E.D.Pa.1993). However, while it is true that in those cases, the General Paramount Clause was interpreted to allow for a higher limit of liability, those cases stand for the proposition that where the Hague-Visby Rules were enacted in the country of shipment, the second paragraph of the General Paramount Clause is implicated and the Hague-Visby Rules are therefore incorporated into the Bill of Lading. In this case, the country of shipment was Japan, which had not enacted the Hague-Visby Rules at the time of the contract. Thus, the second paragraph of the General Paramount Clause is not implicated. According to the first paragraph of the General Paramount Clause, the Hague Rules as enacted by Japan would be incorporated into the Bill of Lading.

While the General Paramount Clause suggests the application of Japanese COGSA, we nonetheless agree with the district court's conclusion that the liability limits of the Hague-Visby Rules, as enacted in England, apply to the Itel/Candyline agreement. First, Clause 3 in the Bill of Lading (forum selection clause) states that any dispute arising under the Bill of Lading shall be decided in the country of the carrier's place of business. The "carrier" for purposes of the Itel/Candyline agreement is Candyline, whose principal place of business is London. Thus, Clause 3 points toward the application of English law. Second, Clause 10 ("English law to apply"), which

is contained in the typewritten addendum to the Booking Note, calls for the application of English law.

Until recently, forum selection clauses such as these were unenforceable as a violation of U.S. COGSA. Recently, however, the Supreme Court overruled the line of cases invalidating forum selection clauses in COGSA cases, holding that U.S. COGSA does not nullify foreign arbitration clauses contained in maritime bills of lading. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 535-36, 115 S.Ct. 2322, 2327-28, 132 L.Ed.2d 462 (1995). In *Sky Reefer,* the Court upheld a foreign arbitration clause against a challenge that the clause violated section 3(8)[4] of U.S. COGSA by making recovery under U.S. COGSA more difficult. *See id.* at 531-32, 115 S.Ct. at 2324-26. At least one court has upheld a foreign forum selection clause based on the Court's analysis in *Sky Reefer,* noting that such clauses are enforceable unless the substantive law the foreign forum would apply is less than what COGSA guarantees. *See Blaise G.A. Pasztory v. Croatia Line,* 918 F.Supp. 961, 965 (E.D.Va.1996). Here, the foreign forum selection clauses call for the application of English law which, under the Hague-Visby Rules, contains a higher liability limit than that under U.S. COGSA. Thus, under a *Sky Reefer*-type analysis, the forum selection clause should be enforced.

Furthermore, under generally accepted principles of contract construction, specific clauses take precedence over general ones, and clauses that have been added by the parties preempt form

---

[4]Section 3(8) of U.S. COGSA provides:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties or obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.

46 U.S.C.App. § 1303(8).

provisions.  See, *e.g., Insurance Co. of N. Am. v. S/S SEALAND DEVELOPER,* 1990 A.M.C. 2967, 2970 & n. 4 (S.D.N.Y.1989).  Clause 10 of the addendum to the Booking Note is a specific clause that was added by the parties and therefore should preempt the boilerplate clause paramount. Additionally, while Clause 3 of the Bill of Lading was not added by the parties, it is more specific than the General Paramount Clause, and it, too, calls for the application of English law.

As to Candyline's argument that under English law, the liability scheme contained in the Japanese COGSA, rather than that of the English Hague-Visby Rules, would apply, we agree with the district court that the language of Clause 10 ("English law to apply") together with that of Clause 3 (forum selection clause) satisfies Article X(c) of the Hague-Visby Rules, which provides that the Hague-Visby Rules apply if "the contract contained in or evidenced by the bill of lading provides that these Rules or legislation of any State giving effect to them are to govern the contract."

*C. Do the Liability Limits of the U.S. COGSA Apply to the Candyline/Mammoet Agreement?*

We turn now to the question of whether the Candyline/Mammoet agreement evidences a clear intent to abrogate the liability limits of the U.S. COGSA in favor of higher liability limits contained in a foreign statutory regime.  As the district court noted, the Candyline/Mammoet contract and the Itel/Candyline contract are nearly identical.  However, the district court concluded that unlike the Itel/Candyline agreement, the Candyline/Mammoet agreement did not evidence an intent to overcome the congressional mandate that the liability limits of the U.S. COGSA apply in the absence of a clear agreement to apply a higher liability limit.  We disagree.  While the Candyline/Mammoet situation is marginally different from the Itel/Candyline situation, we do not think the differences between the two situations constitute adequate grounds upon which to distinguish the statutory schemes applicable to the liability limits of the respective contracts.  The factors that counseled in favor of our applying the higher liability limits of the English Hague-Visby

Rules to the Itel/Candyline contract are present in the Candyline/Mammoet contract, as well.

As with the Itel/Candyline contract, the Bill of Lading was issued in Japan, and the country of shipment was Japan;  both of these facts suggest, as they did in the Itel/Candyline contract, the application of the Japanese COGSA liability scheme, which does not include the Hague-Visby Rules.  However, the Candyline/Mammoet agreement, like the Itel/Candyline agreement, also contains Clause 10, the typewritten term added by the parties stating "English law to apply." Therefore, the only ground for distinguishing between the Itel/Candyline situation and the Candyline/Mammoet situation is Clause 3 (forum selection clause), which provides for the application of the law of the carrier's principal place of business.  The "carrier" for purposes of the Candyline/Mammoet agreement was Mammoet, whose principal place of business is Amsterdam rather than London.  Thus, Clause 3 calls for the application of Dutch law.  Clause 3, however, is an inadequate ground upon which to distinguish the Itel/Candyline contract from the Candyline/Mammoet contract, for two reasons.  First, Clause 3 specifies that "[a]ny dispute ... shall be decided in the country where the carrier has his principal place of business, and the laws of such country shall apply except as provided elsewhere herein." (emphasis added).  Clause 10, a typewritten phrase added by the parties, specifically provided for the application of English law. Second, even if Clause 10 were eliminated, the Netherlands, like England, has adopted the Hague-Visby Rules.  Thus, even if the liability limits of the contract were governed by Dutch law, the higher liability limits contained in the Hague-Visby Rules would nevertheless apply.  *See* 6 Benedict on Admiralty 1-30 (Frank L. Wiswall ed., 1998).  We therefore conclude that Clause 3 is not an appropriate ground upon which to distinguish the Itel/Candyline agreement from the Candyline/Mammoet agreement.  If anything, Clause 3 evidences an intent to abrogate the liability limits of the U.S. COGSA in favor of a foreign statutory scheme with higher liability limits.

*IV. CONCLUSION*

For these reasons, we affirm the district court's determination that the amount of liability under the Itel/Candyline contract is governed by the English Hague-Visby Rules and reverse the district court's conclusion that amount of indemnity under the Candyline/Mammoet agreement is subject to the U.S. COGSA. We remand for the district court to determine the amount of indemnification to which Candyline is entitled pursuant to the English Hague-Visby Rules.

AFFIRMED in part, REVERSED in part and REMANDED.