**ACCIAI SPECIALI TERNI USA, INC., Plaintiff,**

v.

**M/V BERANE, et al., Defendants.**

**No. Civ.S–01–765.**

United States District Court,
D. Maryland,
Northern Division.

Feb. 5, 2002.

James D. Skeen, David W. Skeen, Wright Constable and Skeen LLP, Baltimore, MD, for Acciai Speciali Terni USA, Inc.

James W. Barlett, III, Alexander M. Giles, Semmes Bowen and Semmes PC, Baltimore, MD, for M/V Berane, Oktoih Overseas Shipping Ltd., Trans Sea Transport.

Kevin A. Dunne, Charles A. Diorio, Ober Kaler Grimes and Shriver, Baltimore, MD, for Transcom Terminals, Ltd.

## MEMORANDUM OPINION AND ORDER

SMALKIN, Chief Judge.

This matter comes before the Court on a motion for partial summary judgment, filed by the plaintiff Acciai Speciali Terni USA, Inc. ("AST"), which seeks a declaration that the Hague–Visby Rules of Italy, rather than the U.S. Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. §§ 1300–1315, set the limit to the potential liability of defendants Oktoih Overseas Shipping Ltd. ("Oktoih") and Trans Sea Transport N.V. ("Trans Sea"). AST is seeking relief for cargo damage allegedly caused by Oktoih, the carrier, and Trans Sea, the charterer of the carrying vessel, through negligence and breach of contract. The issues have been well briefed by AST and Trans Sea, and no oral hearing is necessary.[1] Local Rule 105.6 (D.Md.).

### BACKGROUND

The general facts of this case are not in dispute. Acciai Speciali Terni, S.p.A., engaged the carrier Oktoih to make a shipment of steel sheets and coils from the port of Civitavecchia, Italy, to Baltimore, Maryland, on board the M/V Berane. Oktoih in turn entered into a charter party with Trans Sea, which agreed to perform the actual carriage. The vessel departed Civitavecchia on April 18, 2000, and arrived in Baltimore on May 10, 2000. Trans Sea carried the steel under a bill of lading, whose contractual provisions govern the rights and obligations both of Trans Sea and of AST. See Wemhoener Pressen v. Ceres Marine Terminals, Inc., 5 F.3d 734, 738 (4th Cir.1993). AST alleges that Trans Sea received the steel cargo in good condition but delivered it damaged at the port of destination.[2] This admiralty

---

1. Defendant Oktoih has not opposed the motion.

2. AST also claims damages to a complementary shipment of steel sheets and coils carried aboard the M/V Bulk Sapphire. However, as neither Oktoih nor Trans Sea played any role in the carriage of that cargo, their potential liability in this action is limited to the alleged

action followed.

Clause 2 of the bill of lading, the General Paramount Clause, provides:

The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading ... as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

*Trades where Hague–Visby Rules apply.*

In trades where ... the Hague–Visby Rules [ ] apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in charge of another Carrier, and to deck cargo. ...

The bill of lading also contains Additional Clause B, entitled "U.S. Trade [and] Period of Responsibility," which states:

In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act, then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the goods are in the Carrier's custody.

## *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In *Anderson*, the Su-

preme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249, 106 S.Ct. 2505. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely, *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Here, there is no factual dispute, but only a question of law presented, which is amenable to resolution on summary judgment.

## *ANALYSIS*

 COGSA, the American version of the Hague Rules, applies *ex proprio vigore* "to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C.App. § 1312; *see also id.* § 1300; *Rockwell Int'l Corp. v. S/S Koeln Express*, 1987 A.M.C. 2537, 2539 (D.Md.1987). It applies likewise to charter parties, so long as bills of lading are

damages suffered by AST as a result of

(mis)carriage on the M/V Berane.

issued under them. 46 U.S.C.App. §§ 1301(b), 1305. The Hague–Visby Rules, which the United States has not adopted, operate much like COGSA for shipments outbound from a signatory nation. They apply *ex proprio vigore* whenever bills of lading are issued in a signatory nation or carriage is from a port in a signatory nation. *See* Protocol to Amend the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, Feb. 23, 1968, 1977 Gr. Brit.T.S. No. 83 (Cmnd.6944) (entered into force June 23, 1977) (hereinafter the "Visby Amendments"), art. 5, *reprinted in* 3 Thomas J. Schoenbaum, Admiralty and Maritime Law 755–56 (3d ed.2001). Unlike COGSA, however, the Hague–Visby Rules do not apply compulsorily to shipments inbound to a signatory nation.[3] Thus, for shipments to the United States from a nation that has enacted the Hague–Visby Rules, two statutory regimes apply compulsorily: the Hague–Visby Rules and COGSA. And so a legal Gordian knot has been tied. Congress, however, *per proprium vigorem maiorem,* has cut it effortlessly and with aplomb—United States courts must apply COGSA, when its terms so require, regardless where bills of lading were issued or whence carriage began. *See Farrell Lines Inc. v. Columbus Cello–Poly Corp.,* 32 F.Supp.2d 118, 128 (S.D.N.Y.1997), *aff'd sub nom. Farrell Lines Inc. v. Ceres Terminals Inc.,* 161 F.3d 115 (2d Cir.1998); *Rockwell Int'l Corp.,* 1987 A.M.C. at 2539.

The bill of lading for the M/V Berane was issued under the charter party entered into between Trans Sea and Oktoih. Italy, the country of shipment, has enacted the Hague–Visby Rules. *See* AST Part. Sum.Jgmt. Motion, Exh. B. Nevertheless, because the shipment was bound for the United States, COGSA, with its $500 per package limitation of liability, not the Hague–Visby Rules, applies compulsorily to this bill of lading.

■ Although COGSA does not permit parties to a bill of lading to reduce the carrier's liability, 46 U.S.C.App. § 1303(8), it does allow them to agree to increase the carrier's liability beyond what COGSA requires. 46 U.S.C.App. §§ 1304(5), 1305; *see also J.C.B. Sales Ltd. v. Wallenius Lines,* 124 F.3d 132, 135–36 (2d Cir.1997), *aff'g J.C.B. Sales Ltd. v. M/V Seijin,* 921 F.Supp. 1168 (S.D.N.Y.1996). The Hague–Visby Rules raise the limit of a carrier's liability to $800, more or less, per package.[4] To the extent that the carrier agrees to be bound by this more onerous liability limit, nothing in COGSA prevents it. Analysis of the language of the bill of lading itself, guided by rules of contractual interpretation and supplemented, when appropriate, by extrinsic evidence, may evince such an agreement. In the instant case, AST relies solely on the bill itself, especially the general paramount clause; Trans Sea points to the bill's U.S. trade clause and submits, in addition, its charter party agreement with Oktoih.

■ The general paramount clause of the bill of lading for the M/V Berane does not designate one law paramount. Instead, it marshals an omnium-gatherum of laws paramount, applicable to a variety of possible voyages. Thus: if the country of shipment has enacted the Hague Rules, then its Hague Rules govern; if the country of shipment has not enacted the Hague

---

**3.** Although the international delegates specifically rejected a proposal to apply the Hague–Visby Rules to inbound (as well as outbound) shipments, one signatory nation, Belgium, does apply them bidirectionally. *See* 2A Michael F. Sturley, Benedict on Admiralty § 41, at 5–2 nn. 9 & 10 (7th rev. ed., Matthew Bender & Co.2001).

**4.** The actual amount depends on the current price of gold. *See* Visby Amendments, art. 2; 2A Sturley, *supra* note 3, § 46, at 5–13 n. 4.

Rules, but the country of destination has, then its Hague Rules govern; if neither the country of shipment nor of destination has enacted the Hague Rules, then the Hague Rules as established by the international convention govern. Further (though arguably comprehended within the first scenario): "[i]n trades where" the Hague–Visby Rules "apply compulsorily," then the Hague–Visby Rules "shall be considered incorporated" in the bill. Obviously, the carrier did not draft this bill of lading specifically for the shipment at issue; it is a standard form contract.[5] Nor is the use of such a form bill of lading surprising:

> [I]n international shipping it is not uncommon for large carriers to use bills of lading with a hierarchical paramount clause like the one used [here]. This allows the carrier to use the same bill of lading form for all of its contracts, rather than having to work up a special bill for each individual shipment.

Z.K. Marine, Inc. v. M/V Archigetis, 808 F.Supp. 1561 (S.D.Fla.1992). Sophisticated shippers, such as Acciai Speciali Terni, S.p.A., no doubt understand that which of the various laws paramount is indeed paramount depends on the statutory regimes of the countries whence a particular shipment departs and whither it goes.

Because the Italian statute adopting the Hague–Visby Rules constitutes the "Hague Rules ... as enacted in the country of shipment," the general paramount clause points initially to the Italian Hague–Visby Rules as the governing law.[6] Moreover, shipments from Italy are—under the Hague–Visby Rules and Italian law—compulsorily subject to the Hague–Visby Rules as enacted in Italy. The clause thus points again to application of the Italian Hague–Visby Rules. On the other hand, as sophisticated shippers and carriers must know well, COGSA, not the Hague–Visby Rules, applies compulsorily to all shipments to the United States, regardless of any provision in the bill of lading or foreign law to the contrary. See supra.

If the parties intended this general paramount clause to increase the package liability limitation from $500 to the higher Hague–Visby level on shipments to the United States, the carrier would, in effect, be exposed to the less favorable aspects of each regime. Insofar as COGSA imposes a greater burden, the purported selection of the Hague–Visby Rules is invalid under 46 U.S.C.App. § 1303(8); but insofar as COGSA might benefit the carrier, the selection of the Hague–Visby Rules stands as a contractual assumption of greater liability on the carrier's part. 2A Sturley, supra note 3, § 46, at 5–15. It strains credulity to believe that the carrier intended to be so burdened without more pellucid language and/or without some additional consideration offered by the shipper in exchange for the heavier liability.[7] See Itel Container Corp. v. M/V Titan Scan,

---

**5.** A notation in the upper lefthand corner of the document confirms this: "Liner terms approved by The Baltic and International Maritime Conference; Code Name: 'CONLINEBILL'; Amended January 1st, 1950, August 1st, 1952, January 1st, 1973, July 1st, 1974, August 1st, 1976, January 1st, 1978."

**6.** The Visby Amendments are drafted in such a way as to supplement rather than supplant the Hague Rules. See J.C.B. Sales Ltd., 124 F.3d at 136 (comparing the Visby Amendments to the constitutional amendments and observing that "when a litigant assert[s] a

constitutional right to due process, we recognize it as such despite the fact that it is contained in the Fifth Amendment").

**7.** Even if resort should be had to the venerable, but feeble, canon that dictates that an ambiguity be construed against its drafter (here, the carrier), see Webb v. Old Salem, Inc., 416 F.2d 223, 226 (4th Cir.1969), the equal (or nearly equal) experience and sophistication of the shipper enervate what little force it has. See Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 692 (8th Cir.1997) (declining to apply the doctrine of contra prof-

139 F.3d 1450, 1453 (11th Cir.1998) (recognizing that COGSA permits the parties to agree to a higher liability limit, but observing that the parties' intent to apply the higher limit must be clear, and asserting that "if the question of whether the parties agreed to a higher liability limit is irretrievably ambiguous, then U.S. COGSA applies by default") (citation and internal quotation marks omitted). In this case, no evidence suggests that the shipper paid anything extra for an increase in the carrier's limited liability. By itself, the standard, boilerplate, "multi-tasking" language of the general paramount clause seems insufficient to demonstrate an agreement by the carrier to accept the Hague–Visby liability limits on shipments to the United States.[8]

Nevertheless, even if the Court believed that the general paramount clause itself demonstrated an intent to apply the Hague–Visby limits on this shipment to Baltimore, the general paramount clause does not speak exclusively or univocally. A contract must be read as a whole to discern the intent of the parties. *See* 11 Richard A. Lord, Williston on Contracts § 32:5 (4th ed., West Group 1999). In this case, the bill of lading contains another choice of law clause. Additional Clause B, which is "[t]o be added if required in the contemplated trades," states that if the bill of lading is subject to COGSA, then COGSA "shall govern" it. Here, the contemplated trade is to the United States, where the bill is compulsorily subject to COGSA. Thus, the addition of Additional Clause B is "required in the contemplated trade" by federal law, and Additional Clause B is so invoked, along with its $500 per package liability limitation. Insofar as it conflicts with the general paramount clause, Additional Clause B should determine the meaning of the bill of lading; the general paramount clause, a general contractual provision, should yield to the more specific U.S. trade clause.[9] *See Itel Container*

---

*erentem* when both parties were knowledgeable, sophisticated businesses).

8. Several courts, interpreting an identical paramount clause, have decided otherwise. *See, e.g., J.C.B. Sales Ltd.,* 921 F.Supp. 1168 (interpreting datafreight receipts rather than bills of lading, so that COGSA did not apply compulsorily); *Associated Metals v. M/V Star Skarven,* 1995 A.M.C. 505 (S.D.Fla.1994); *Ilva U.S.A., Inc. v. M/V Botic,* 1992 WL 296562, 1993 A.M.C. 240 (E.D.Pa.1992), *aff'd,* 998 F.2d 1003, 1993 A.M.C. 2445 (3d Cir. 1993); *Associated Metals & Minerals Corp. v. M/V Arktis Sky,* 1991 WL 51087, 1991 A.M.C. 1499 (S.D.N.Y.1991), *vacated and remanded on other grounds,* 978 F.2d 47 (2d Cir.1992). All these courts have found the language of the clause conclusive evidence of the parties' intent to raise the $500 per package limitation of COGSA whenever a shipment is bound for the United States from a Hague–Visby signatory nation. *See, e.g., Associated Metals,* 1995 A.M.C. at 510–12; *Ilva U.S.A., Inc.,* 1992 WL 296562 at *2, 1993 A.M.C. at 244. While this Court agrees that the language of this general paramount clause provides some evidence of an intent to raise the liability limit, it cannot

agree that this evidence, without more, suffices to establish that intent, let alone conclusively establishes it.

9. AST observes that an identical U.S. trade clause—and, indeed, even a more specific U.S. unit limitation clause—did not persuade the district court in *J.C.B. Sales Ltd.* that the carrier and shippers had not agreed in that case to the higher Hague–Visby liability limits. 921 F.Supp. at 1173. The unit limitation clause of the datafreight receipts for the M/V Seijin stated that "the carrier shall be entitled to limit his liability ... where U.S.Law applies, to U.S. $500 per package...." *Id.* However, the district court found that the relevant datafreight receipts were not bills of lading and therefore not subject to COGSA. *Id.* at 1170. *Because COGSA did not compulsorily apply,* there was no conflict between the datafreight receipts' general paramount clause and the more specific U.S. trade and unit limitation clauses; without the animating power of COGSA, the more specific clauses lay dormant. *Id.* at 1173. In affirming the judgment of the district court, the Court of Appeals for the Second Circuit seemed in-

*Corp.*, 139 F.3d at 1455 (noting that "under generally accepted principles of contract construction, specific clauses take precedence over general ones").

Read as a whole, the bill of lading does not evince the carrier's acceptance of the more onerous Hague–Visby liability limits on its shipment of steel sheets and coils to Baltimore. On the contrary, it demonstrates an intent to apply no more and (necessarily) no less than the provisions of COGSA.[10] Especially in light of the U.S. trade clause, AST's "argument that the shipper could reasonably have assumed that the ... Hague–Visby limits would apply is unpersuasive." *Nippon Fire & Marine Ins. Co. v. M/V Tourcoing*, 979 F.Supp. 206, 211 (S.D.N.Y.1997), aff'd, 167 F.3d 99 (2d Cir.1999). Moreover, AST has produced no other evidence that might bolster its argument. Nor has AST alleged that the shipper was not given a fair opportunity to declare a higher value for the shipment, pay a corresponding greater freight, and so insure itself against a more than $500 per package loss. *See Caterpillar Overseas, S.A. v. Marine Transp. Inc.*, 900 F.2d 714, 719 (4th Cir.1990) (stating that a carrier may avail itself of COGSA's liability limitations only if the bill of lading afforded the shipper an opportunity to choose between higher or lower liability by paying a corresponding greater or lesser charge). The Court therefore holds that COGSA—not the Hague–Visby Rules—applies to limit Trans Sea's potential liability.

Accordingly, the Court makes the following rulings:

1. That the Plaintiff's motion for partial summary judgment BE, and it hereby IS, DENIED;

2. That the Hague–Visby Rules of Italy do not apply to the bill of lading for the M/V Berane; and

3. That the U.S. Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300–1315, governs the bill of lading for the M/V Berane, limiting the liability of Defendants Oktoih Overseas Shipping Ltd. and Trans Sea Transport N.V. to $500 per package.

---

clined to agree that the datafreight receipts at issue were not bills of lading and so not subject to COGSA. *J.C.B. Sales Ltd.*, 124 F.3d at 135. Nevertheless, it left the issue ultimately unresolved. *Id.* It noted that even if COGSA did apply, COGSA permitted the parties to raise the liability limitations, and it agreed with the district court that the parties had so agreed through the general paramount clause. *Id.* at 136–37. It apparently failed to recognize, however, that if COGSA applied compulsorily to the datafreight receipts, and if the general paramount clause indicated an intent to apply the Hague–Visby Rules, the more specific U.S. trade and unit limitation clauses—activated by COGSA—would conflict with the general paramount clause. The effects of such a conflict therefore remained unaddressed.

**10.** The terms of the charter party entered into between Trans Sea and Oktoih confirm this.

Clause 34 provides that "[t]he U.S.A. Clause Paramount, the Canadian Clause Paramount or the Clause Paramount incorporating the Hague (Visby) Rules, as applicable, shall be incorporated in all Bills of Lading issued hereunder." Clause 35 states (with less than desirable clarity of punctuation):

> Notwithstanding anything contained herein to the contrary it is agreed that this Charter Party shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States ... or subject to the provisions of the Hague (Visby) Rules, as applicable in the jurisdiction under the Charter Party either act shall be deemed to be fully incorporated in this Charter Party, as far as applicable.

Again, congressional power vanquishes Italian law in this jurisdiction and mandates application of COGSA.