**PAUL SALOFA, Plaintiff,**

**v.**

**SOUTH SEAS STEAMSHIP, INC. and
SAMOA PACIFIC SHIPPING, INC., Defendants.**

High Court of American Samoa
Trial Division

CA No. 7-98

April 6, 1999

Before RICHMOND, Associate Justice, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Katopau T. Ainu'u
For Defendants, Brian M. Thompson

## OPINION AND ORDER

On January 12, 1998, plaintiff Paul Salofa ("Salofa") filed a complaint seeking damages allegedly incurred during the shipment of his truck from Honolulu to American Samoa. Defendants South Seas Steamship, Inc. and Samoa Pacific Shipping, Inc. (collectively "SSS/SPS") filed a motion for partial summary judgment on February 13, 1998, which was withdrawn at a subsequent hearing. Trial was held on March 1, 1999, with counsel for both parties present.

## Facts

The facts of this case are largely uncontested. In December 1996, Salofa purchased a new Dodge Ram Truck in Honolulu, Hawaii, which he desired to be shipped to American Samoa. Salofa made local inquiries regarding shipping options and subsequently instructed the Honolulu dealership, Cutter Dodge, to deliver the truck and make arrangements for shipping.

When the Cutter Dodge representative delivered the truck, a bill of lading was prepared for shipment. That form, Bill of Lading No. A013S2905, was admitted at trial as Exhibit No. 12. The section marked "Shippers Declared Value $", which on its face includes a reference to the liability limitation clause on the reverse of the form, was left blank. SSS/SPS proceeded to ship the truck, and when it arrived in American Samoa, it was slightly dented on the right side of the truck box, and scratched on the right side step.

A. Liability

 The court recently analyzed the issue of liability in shipping cases in *Tuimavave v. Harbor Maritime*, CA No. 30-97, slip op. at 4-6 (Trial Div. November 6, 1998), and we begin with a brief review of that analysis. Under the Carriage of Goods by Sea Act ("COGSA"), applicable by its own terms to American Samoa, the carrier has an affirmative duty to "properly and carefully load, handle, stow, carry,

131

keep, care for, and discharge the goods carried." 46 U.S.C.S. App. § 1303(2), 1312 (1987 & Supp. 1994). The plaintiff bears the initial burden of establishing a prima facie case for breach, and does so by establishing that the goods were damaged while in the carrier's custody. *Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347, 351 (2d Cir. 1981) (citation omitted).

The plaintiff meets this burden merely by establishing that the goods were delivered to the carrier in good condition but were nevertheless found to be damaged upon receipt. *Vane Trading Co., Inc. v. S.S. "Mette Skou",* 556 F.2d 100, 104 (2d Cir. 1977); *United States v. Lykes Bros. Steamship Co., Inc.,* 511 F.2d 218, 223 (5th Cir. 1975).

In the instant case, the truck presented to SSS/SPS for shipping was brand new, and was delivered directly by the vehicle dealership's representative. The bill of lading specifically lists the cargo to be shipped as "NEW MOTOR VEHICLE." Further, that document includes standard verbiage acknowledging the cargo to be in "good order and condition, unless otherwise indicated in this Bill of Lading." We note that a bill of lading functions as both a contract and a receipt as to the quantity and description of the goods to be shipped. 70 AM. JUR. 2D *Shipping* § 732 (1987 & Supp. 1993). Moreover, a "clean bill of lading," one which does not specifically identify any prior damage to the goods to be shipped, will generally suffice as prima facie evidence of delivery in good condition. *David R. Webb Co., Inc. v. M/V Henrique Leal,* 773 F. Supp. 702, 705 (S.D.N.Y. 1990), *citing Madow Co. v. S.S. Liberty Exporter,* 569 F.2d 1183, 1185 (2d Cir. 1978). Because the truck was new and the bill of lading failed to indicate any defects prior to shipping, we find by a preponderance of the evidence that the damage occurred during the voyage as a result of negligence by SSS/SPS's agents.

As Salofa has therefore established a prima facie case for recovery, SSS/SPS now assume the burden of proving that they acted with "due diligence." *Tuimavave,* CA No. 30-97, slip op. at 4-6; *Roman Crest Foods Inc. v. S.S. Delta Columbia ex S.S. Santa Clara,* 574 F. Supp. 440, 441-42 (S.D.N.Y. 1983); *Quaker Oats Co. v. H/V Torvanger,* 734 F.2d 238, 240-241 (5th Cir. 1984); *Puerto Rican American Ins. Co. v. Sea-Land Service,* 653 F. Supp. 396, 400 (D. P.R. 1986). However, SSS/SPS failed to prove that they acted with due diligence. As in *Tuimavave,* SSS/SPS instead relied on the statutory limitation of liability established under COGSA and discussed below.

B. <u>Limitations to Damage Award</u>

COGSA provides in relevant part:
> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage· to or in connection with the transportation of goods in an amount exceeding $500 per

package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C.S. App. § 1304(5). This provision, which limits a carrier's liability to $500 per item, unless the shipper chooses to declare a higher value, was plainly incorporated into the bill of lading in this case. The section on the front of the form entitled "Shippers Declared Value" offered Salofa the opportunity to declare the full value of his truck (or some lesser amount above $500), and he would therefore have been subject to a correspondingly higher freight charge. That section specifically alerts the shipper to "Carriers Liability Limits," and it further cross-references Clause 13, the smaller print on the reverse which explains the COGSA liability limitations in detail. Whether unwittingly or not, Salofa left this part of the bill of lading blank and declined the additional coverage, thereby limiting his recovery to the statutory minimum.

This case does, however, present a potential issue of notice. Basic fairness requires that before a carrier can rely on the $500 liability limitation, it must at least afford the shipper the opportunity to choose between accepting the COGSA minimum or paying a higher freight charge to receive a correspondingly higher level of protection. *General Electric Co. v. Nediloyd,* 817 F.2d 1022, 1028 (2nd Cir. 1987). One element of that fair opportunity is that the carrier give the shipper adequate notice of the limitation of liability. *Id.* at 1027-28.

■ The carrier bears the initial burden of offering prima facie evidence of adequate notice, and he may do so simply by showing that the bill of lading advised the shipper of the $500 liability limitation and of his options for increasing that amount. *Tuimavave,* CA No. 30-97, slip op. at 4-6; *Nediloyd,* 817 F.2d at 1028; *Brown & Root, Inc. v. H/V Peisander,* 648 F.2d 415, 424 (5th Cir. 1981). Including such language in the bill of lading puts the shipper on constructive notice of the liability limitation; actual notice is not required. *Carmen Tool,* 871 F.2d at 900-901.

■ The bill of lading in this case did indeed include the necessary warnings, and SSS/SPS have therefore successfully met their initial burden in this regard. The matter is further complicated, however, by the fact that Salofa himself was completely unaware of the existence of the bill of lading, and therefore was not personally given even constructive notice of his options for coverage. Nevertheless, Salofa did instruct the Cutter Dodge dealership to deliver the car on his behalf, and that authorization created a legal agency relationship between Salofa and Cutter Dodge for these purposes. In most circumstances, "a person authorized to deliver goods of another to a common carrier for transportation may be treated by the latter as having authority to stipulate

133

for and accept the terms of the contract of carriage." 14 AM. JUR. 2D *Carriers* § 551 (1964 & Supp. 1998). The owner will be presumed to have full knowledge of the contract and will accordingly be bound by its terms. *Id.*

■ There is nothing atypical about the arrangement here which would cause us to believe that Cutter Dodge was not qualified to assume the role of agent in this case. Presumably, a vehicle dealership would have considerable experience with the shipping of vehicles, and would therefore be expected have some understanding of the rules and procedures involved with this process. Salofa spoke with the Cutter Dodge representative who delivered his vehicle, and that the representative told him that he had never signed any documents in the course of making the arrangements for shipping. Even if this hearsay evidence is true, however, we note that "in the ordinary course of events it is not necessary for the shipper to sign a bill of lading, and he may be bound by its terms and conditions even though he has not signed it." 13 AM. JUR. 2D *Carriers* §276 (1964 & Supp. 1998). Having failed to refute SSS/SPS's evidence of fair notice as provided to his agent, Salofa's damages will be limited to $500 as provided by COGSA and the bill of lading.

## C. Damages

Because Salofa's damages are limited to $500, we need not precisely review the measure of actual damages in this case. Those damages by all estimates exceeded the $500 ceiling, and Salofa is therefore entitled to recovery of the full $500 but no more.

## D. Attorney's Fees

■ SSS/SPS have requested that the court award them attorney's fees in this matter, arguing that Salofa's case—and particularly his request for exorbitant damages—was frivolous. Although we are skeptical of Salofa's need to replace the entire truck bed, he did manage to offer evidence to this effect. Given this showing, which lends at least some credence to the viability of his claims, an award of attorney's fees would not be appropriate.

## Order

For the foregoing reasons, Salofa shall recover from SSS/SPS in the amount of $500.

It is so ordered.